*For reversal*—None.

---

WILLIAM H. EVERS, ADMINISTRATOR, RESPONDENT, v. ANNIE T. DAVIS, APPELLANT.

Argued December 4, 1913—Decided April 24, 1914.

1. The Tenement-House act of 1904 (*Pamph. L., p.* 152) contains, *inter alia*, a provision requiring all non-fireproof tenements more than three stories in height to be furnished with exterior fire escapes and prescribes a specific penalty for the violation of any of the provisions of the act.  A non-fireproof tenement owned by the defendant took fire, as a result of which the plaintiff's intestate died of injuries attributable to the absence of fire escapes. Upon the trial of the issue joined in the action of negligence brought by the plaintiff the court permitted an amendment of the complaint striking out its allegations of negligence and in their stead charging the defendant with the violation of the statute referred to, thereby shutting out a defence that was admissible under the issue in the action of negligence.  *Held*, that the action of negligence was the proper remedy by which to obtain whatever benefit upon common law principles inured to the plaintiff from such penal statute which, of itself, gave no civil remedy or private right of action, and that it was injurious error to permit an amendment the effect of which was to shut out a defence that was appropriate to the proper action.

2. The Tenement-House act of 1904 is a purely public statute enforceable by specified penalties and evincing no legislative intention that, in addition thereto, the class of persons for whose protection it was enacted should have a private right of action in case of injuries resulting from a violation of its provisions.

3. Penal statutes that give no private right of action may nevertheless affect private rights upon common law principles applicable to the action of negligence.

---

On error to the Hudson Circuit.

For the appellant, *James R. Bowen.*

For the respondent, *Frank M. Hardenbrook.*

The opinion of the court was delivered by

GARRISON, J. Upon the trial of this cause, which was an action of negligence brought by an administrator to recover damages for a death that was attributable to the absence of fire escapes upon a tenement-house owned by the defendant, the trial court conceived the idea that the proper action was not an action of negligence but "an action based on a violation of the statute," the statute in question being the Tenement-House act of 1904. *Pamph. L., ch.* 61. Under this conception of the plaintiff's statutory rights the trial court permitted an amendment of the complaint by which its allegations of negligence were stricken out and in their place the non-performance of a statutory duty was charged. The effect of this amendment and of the trial theory that induced it was the overruling of a line of testimony offered by the defendant and the denial of requests to charge, which rulings were admittedly erroneous if the action of negligence originally brought by the plaintiff was the proper remedy.

A little more in detail the facts of the case were as follows: On November 11th, 1912, the defendant became the owner of "a three-story and basement tenement" which was unprovided with fire escapes. On December 28th, 1912, the building took fire and plaintiff's intestate died of injuries attributable to the absence of fire escapes. The Tenement-House act of 1904, by its thirty-sixth section, provides that every non-fireproof tenement-house "more than three stories in height" shall be provided with fire escapes from each apartment. By the one hundred and eighty-ninth section it is provided that every person who shall violate any provision of the act shall be subject to certain penalties to be recovered by the State Board of Tenement House Supervision under a proceeding prescribed by the one hundred and ninety-third section. No other remedy or right of action is given by the statute. In order to

enforce this penalty it would be necessary for the state board to show that the defendant's three-story and basement tenement was a tenement more than three stories in height, and this it could only do by showing that the basement should be counted as a story. Upon this point the language of the statute is as follows:

"Section 9. A basement is a story partly, but not more than one-half below the level of the *grade,* and for the purposes of this act shall be counted as a story *if more than five feet above the grade,* unless otherwise specifically stated.

"10. A cellar is a story more than one-half below the level of the *curb,* and for the purposes of this act shall not be counted as a story unless otherwise specifically stated."

Inasmuch as there was a pitch of at least six inches from the level of the ground at the building line to the curb, the question whether or not the basement should be counted as a story depended upon the point of measurement indicated as "grade" in section 9. The trial court resolved this question against the defendant by charging that the "grade" mentioned in section 9 was the curb level, a ruling with the correctness of which we are not now concerned excepting to point out its crucial character.

The meritorious defence that the defendant was prevented from making by the course pursued at the trial was that the tenement-house property had been in the family for many years, and that it had never been equipped with fire escapes for the reason that under the construction placed upon the statute by the State Board of Tenement House Supervision, and according to the measurements made by its inspectors, the building did not come within the statute as requiring fire escapes.

The last of these inspections and measurements before the fire was made on May 26th, 1910, and by an inspection made after the fire it was shown that no change had taken place in the grade, building or curb between these two dates. The record of the inspection of May 26th, 1910, was in court in the custody of the proper officer of the state board, but was not allowed to be put in evidence, nor was the witness per-

mitted to testify as to the rules of the board under which such reports of inspectors were filed with its secretary. We need not stop to consider whether or not these exclusions were erroneous if the sole object of the testimony was to prove the actual height of the basement. Apart from this question the existence of such official record was obviously relevant and material upon other aspects of the case regarded as an action of negligence—notably to show the construction that had been placed upon the language of the statute by the official board that under the legislative scheme was charged with the duty of making such a construction, and that by such construction and the official measurements made thereunder the negligence of the owners of the building, including that of the defendant, was at least a question for the jury.

It would be profitless to consider the ruling out of this evidence in the light of an error made in the trial of an action of negligence, for the reason that the defendant's case was met by the abandonment of the issue joined in that form of action and the substitution therefor of another and different issue to which the rejected evidence was thought to have no application. While the defendant's first witness was on the stand the court addressed to counsel for the plaintiff this question: "Let me ask you, Mr. Hardenbrook, whether you want to try this case upon the theory you have brought it on or whether you are relying on the question of a mere breach of duty and consequent injury? Because in the one case this would be clearly relevant testimony, if it was on the case made by your complaint that they were negligent in not putting it there." To which counsel replied, "I do not wish to base the case on negligence but on the statutory requirement and not rest the case on the ground of negligence."

When the defendant's second witness was on the stand the court interrupted counsel for the defendant, who had spoken of negligence, by saying, "It (*i. e.,* the action) is not based on negligence; it is based on a violation of the statute."

At the close of the testimony the court granted a motion to amend the complaint so that it should not charge any element

of negligence nor be susceptible to any defence based upon that style of action.

The defendant's motion for a direction was met by the declaration that "with respect to the point that there is no negligence established the answer to that is this, that the action is not for negligence now."

Finally the court refused to charge the following request: "If you find that the building was of such character, as, under the law, required fire escapes, you must further find that the negligence of the defendant in failing to provide fire escapes was the cause of the death of the decedent, or the plaintiff cannot recover," and in connection therewith made this statement for the record: "My conception of an action of this kind is—I want to get it on the record—my conception is the conception that is voiced by the *dictum* of the Court of Errors and Appeals in Fielders *v.* North Jersey Street Railway Co., to the effect that, assuming the party injured in a given case to be one of a class for whose benefit a duty has been by statute or ordinance imposed upon the opposite party, and assuming that the evidence shows an actual breach of that duty, it would seem the sole remaining inquiries should be whether the violation of the imposed duty was the proximate cause of the injury, and if so whether any faulty conduct of the injured party was the contributing cause.

"That is my conception of the action, and that is the conception upon which the plaintiff in the case proceeds, upon which his complaint rests, and if I am wrong about that why there is nothing for the court to do but to reverse me, that is all; and I want to have it squarely brought up, and I therefore write it right in the record in response to your request."

These quotations from the printed case leave no room for doubt that an admitted defence to the action of negligence was shut out by the trial court, first, because that was not the proper form of action, and second, because the proper action was one based directly upon a violation of the Tenement-House act.

In each of these respects we think that the trial court was

in error and that, to the contrary, no civil action could be brought directly upon the statute, and that whatever benefit the plaintiff in a civil action derives from the statute must be through the common law action of negligence.

The reason why no civil action can be based upon the statute is because no such action or right of action is given by the statute. The language of the statute is entirely free from ambiguity; it seeks to eliminate a source of danger by the imposition of a penalty. The legislature could, if such were its intention, have provided also that anyone injured by a breach of the statute should have a remedy by civil action. It has not seen fit to do so, and the court has no right to supply such omission, especially when, as in the present case, it is a deliberate omission. For the Tenement-House act of 1904 is an evolution from the act of March 24th, 1899 (*Pamph. L., p.* 359), the first section of which provides, *inter alia,* that tenements shall be furnished with fire escapes, and by the third, of which a penalty for the breach of the statute is provided, "and, in case of fire occurring in any of said buildings the owner thereof shall *also* be liable in an action of damages in case of death or personal injury sustained in consequence of such fire breaking out in such building in the absence of such fire escapes." The retention in the later act of the remedy by penalty contained in the earlier one while omitting its companion remedy by civil action is, as a matter of construction, conclusive of the legislative intent, for what circumstance could more strongly evince a deliberate intention to omit the civil remedy short of a superfluous declaration by the legislature that what it omitted from a statute was not intended to be included in it? The mere application of the ordinary rules of construction to the act of 1904, therefore, so completely demonstrates the fundamental character of the error into which the court below fell that the matter might well be allowed to rest here were it not for the danger of a misconception that would be equally erroneous, viz., that the omission to give a private action evinced a legislative intention that the statute should be without effect upon private rights. That this is not the case, and the reason why it is not is so

well stated in a recent article by Ezra Ripley Thayer, in the Harvard Law Review for February, 1914, that I cannot do better than quote what he says: "The legislature must be assumed to know the law, and if upon common law principles such a statute would affect private rights, it must have been passed in anticipation of that result. The legislature is to be credited with meaning just what it said—that the conduct forbidden is an offence against the public, and that the offender shall suffer certain specified penalties for his offence. Whether his offence shall have any other legal consequence has not been passed on one way or the other as a question of legislative intent, but is left to be determined by the rules of law. If the effect of such a statute is to change the relations of individuals to one another, this must come about not through the intent of those who enacted the statute but by the operation of common law principles. It thus becomes a question of applying to the situation the principles of the law of negligence, in the light of which the statute was passed."

The question then is, What is, upon common law principles, the effect of statutes such as the one we are considering upon the action of negligence? The familiar expressions that the breach of such a statute is "negligence *per se*" or is "*prima facie* evidence of negligence" seem to me to postpone elucidation rather than to contribute to it, while the implication that proof of a breach of a public statute will support a private recovery is positively misleading.

A fact constantly to be borne in mind in tracing the legal effect of such statutes is that the negligence that is essential to the action of negligence is not solely in the overt act that produced the injury complained of, but may lie in the failure to foresee the danger likely to result from the doing of such act. "Danger, reasonably to be foreseen at the time of acting, is the established test of negligence" says the writer already cited. Of negligence of this sort it may be said that it is common to all phases of the action, which cannot be said of the mere overt act, which may not be an act of neglect or omission at all, but, on the contrary, one of affirmative commission, *e. g.*, the blowing of a loco-

motive whistle (*Bittle* v. *Camden and Atlantic Railroad Co.*, 55 *N. J. L.* 615), the discharge of steam (*Mumma* v. *Easton and Amboy Railroad Co.*, 73 *Id.* 653) or the extraordinary lurching of a train (*Burr* v. *Pennsylvania Railroad Co.*, 64 *Id.* 30). But whether the overt act be one of omission or of commission, and whether the conduct of the defendant be stated in terms of "duty" or of "fault," the one common denominator, so to speak, of the action of negligence is this element of what we may call discoverable danger; that is to say, a danger that is susceptible of being discovered in advance of action or inaction by the exercise of that degree of care which if a man fails to exercise he becomes civilly liable for the consequences of his conduct. Now, it is precisely upon this element of discoverable danger that public statutes or ordinances act, and they do this not by giving to the plaintiff a right of action he did not have before, but by their operation upon what we may call the common law conscience of the defendant, better known to us in its personified form of "the ordinary prudent man," the familiar fiction designed by the common law to aid juries, when deciding what was the proper thing for a man to do, to lose sight of the personal point of view of that particular man and to base their judgment upon a general standard which in the final assize is what the jury itself thinks was the proper thing to do.

Now this ordinary prudent man of common law creation must in the nature of things be regarded as a law-abiding citizen to whom, as is pointed out by Dean Thayer in the article referred to, it would be an unjust reproach to suppose that, knowing the statute—for upon familiar principles he can claim no benefit from his ignorance of it—he would break it, *reasonably* believing that it was a prudent thing for him to do, and that in all probability no harm would come of it.

In other words, it is inconsistent with ordinary prudence for an individual to set up his private judgment against that of the lawfully constituted public authority. We must assume, therefore, that the ordinary prudent man would not

do such a·thing since to do·so would be to change his entire nature and to forego the very traits that brought him into existence. He would, in fine, cease to be the pattern man he must continue to be in order to be at all.

Upon common law principles, therefore, when the legislature has by public statute established a certain standard of conduct in order to prevent a danger that it foresaw, it has in this regard forewarned the "ordinary prudent man" and through him the defendant in a civil action, whose conduct must always coincide with this common law criterion. Such danger, therefore, does not have to be proved by·the plaintiff, since there is no longer room for a reasonable difference of opinion, for by his breach of the statute the defendant, through his common law conscience, is charged with knowledge that if injury ensues he will have acted at his peril.

The court therefore should so instruct the jury, whether such instruction be couched in the terms of the defendant's duty to perform or of his culpability for neglect, or of his liability for the result of his action or inaction, as the case may be; and thus upon common law principles the plaintiff in an action of negligence obtains the benefit of the statute if he be one of the class for whose protection it was enacted and the breach of such statute was the efficient cause of the injury of which he complains. Confined to the benefit that thus accrues from these penal statutes to the plaintiff in a civil action, the *dictum* in the case·of *Fielders* v. *North Jersey Street Railway Co.,* 68 *N. J. L.* 343, affords no support for the proposition that such statutes confer an independent statutory remedy or create a civil right of action. The point to be observed, and it is the only matter with which we are now concerned, is that whatever benefit the plaintiff in a civil action derives from such penal statutes is through the medium of the action of negligence; from which it follows that if such action be abandoned, as was done in the present case, the plaintiff thereby cuts himself off from the very benefits of the statute that he is seeking to derive from it.

It is the necessary corollary of these views that the defendant in such action of negligence retains all of the defences appropriate to such action that are not affected by such penal statute which, as we have seen, operates conclusively upon the basis of the defendant's liability but not at all upon the *factum* of such liability. The operation of such a statute, in fine, is that the defendant's duty toward the plaintiff as affected by such statute takes the place of what would have been his common law duty if such statute had not been enacted, leaving the action of negligence in other respects unaffected by such statute. Thus a defendant, although he cannot be heard to say that it was not his duty to obey the statute, may show what he did in his effort to obey it, leaving it to the jury to say whether such effort was what a reasonably prudent person would have done in view of the statute.

In the present case, for instance, if the defendant had shown that upon acquiring her ownership she had at once contracted with a responsible concern for the immediate erection of fire escapes and in the same hour her tenement had taken fire; or if the contracting concern with its contents had been destroyed before the fire escapes could be erected, or if their erection had been prevented by the injunctive process of the courts, a question for the jury, unaffected by the Tenement-House act, would be presented.

Whether or not the defendant in the present case will be able upon another trial to present evidence that will raise a similar question cannot be known until she has been permitted to put in the testimony upon which such defence must rest. At present all we know is that a defence that was admittedly available under the action of negligence was rejected because it was a defence, *i. e.*, was rejected by the abandonment of the action to which it was a defence and the substitution of a supposed style of action that has no legal existence. To redress this injury the judgment entered for the plaintiff in the court below must be reversed and a *venire de novo* awarded.

*For affirmance*—None.

*For reversal*—THE CHANCELLOR, CHIEF JUSTICE, GARRISON, SWAYZE, TRENCHARD, PARKER, BERGEN, MINTURN, KALISCH, BOGERT, VREDENBURGH, WHITE, HEPPENHEIMER, JJ. 13.