ROOSEVELT DANIELS, PLAINTIFF-RESPONDENT, v. ANDREW BRUNTON, DOING BUSINESS AS BRUNTON REAL ESTATE CO., DEFENDANT-APPELLANT.

Argued April 9, 1951—Decided May 7, 1951.

*Mr. Emil W. A. Schumann* argued the cause for appellant.

*Mr. Louis J. Greenberg* argued the cause for respondent. (*Mr. Samuel M. Cole,* attorney).

The opinion of the court was delivered by

WACHENFELD, J.   The plaintiff was the guest of the tenant occupying a suite of rooms in the defendant's apartment house.   He was injured when a water heater exploded.   The heater consisted of a coal-burning stove with a water jacket connected, by pipes and fittings, to the mains which supplied water for the apartment building.   The water was not paid for by the tenant and a fair inference from the proof is that it was supplied by the landlord.   When a fire was maintained in the stove, water was heated in the jacket and flowed into a storage tank, forming a hot water supply for the apartment.

The stove, water jacket and storage tank were located in the tenant's kitchen.

The stove had been rumbling and shaking when heated over a period of two months or more. A complaint by the tenant to the defendant's predecessor in title resulted in repairs which effected a temporary improvement in its operation. It soon reverted, however, to its menacing ways and the tenant, when the defendant inspected the building prior to purchasing it and later after the defendant had acquired the building, informed the new owner of the condition of the stove. On the latter occasion, which occurred about three weeks before the accident, the defendant promised to make the necessary repairs.

No repairs were made and one morning as the plaintiff was walking by the lighted stove, it exploded, breaking his leg and causing other injuries which hospitalized him for approximately four months. He brought this action against the defendant as owner of the apartment house, alleging, in one count, negligence and, in another, maintenance of a nuisance.

The case was tried before a jury. The plaintiff, together with the tenant and his wife, testified to the events herein narrated and to the additional fact that after the accident a new stove and water heating equipment were installed by the defendant at his own expense. An expert gave it as his opinion that the condition of the stove, as described in the evidence, and the resulting explosion were due to a clogging of the water jacket and connecting pipes by rust and sediment which impeded the proper circulation of the water.

At the conclusion of the plaintiff's case, the defendant moved for a dismissal of the complaint. The trial court granted the motion, expressing its reluctance to do so but holding itself bound by *Clyne v. Helmes,* 61 *N. J. L.* 358 (*Sup. Ct.* 1898).

In *Clyne v. Helmes* the sister, who was a permanent member of the tenant's household, was denied recovery against the owner when she was injured by the falling of a marble mantelpiece, the unsafe condition of which had been called to

the attention of the landlord, who promised to repair it. The court held there was no consideration for the landlord's promise since it was made after the tenant had entered upon the lease, and held further that in any event the sister would not be entitled to recovery since she was not in privity of contract with the owner.

This doctrine has been the subject of much discussion and comment both at the trial level and in the appellate courts. It has been debated many times and the judicial views supporting and opposing it have been expressed and recorded. In *Colligan v.* 680 *Newark Ave. Realty Corp.*, 131 *N. J. L.* 520 (*E. & A.* 1943), the court considered the question and was equally divided.

The challenge of the *Clyne* doctrine, however, has been bypassed as the Appellate Division held, and properly so, that it was not applicable to the present litigation, determining the case *sub judice* was not founded upon contract but upon retained control and the duty imposed upon the landowner by statute. It reversed the judgment for the defendant and held there was sufficient evidence to justify submitting to the jury the question whether the landlord retained control of the fixtures in question and the consequent duty of repair, and so construing various sections of the Tenement House Act as to impose the duty on the landlord in this instance.

At common law there was no implied contract or condition that demised premises were fit and suitable for the lessee's proposed use even though that use was known to the lessor. *Naumberg v. Young*, 44 *N. J. L.* 331 (*Sup. Ct.* 1882) ; *Mullen v. Rainear*, 45 *N. J. L.* 520 (*Sup. Ct.* 1883). In *Clyne v. Helmes, supra,* the court indicated that even an express promise by the lessor to make repairs necessary to render the demised premises fit and suitable for use would be enforceable only when supported by a valuable consideration.

In the present case the plaintiff gave nothing in return for the landlord's promise to make the repairs to the water heater nor was the promise made to him or expressly for his benefit. He points, however, to various sections of the Tenement House

Act as spelling out a duty on the part of the landlord to have maintained the water supply system in good repair and urges that his failure to do so is evidence of actionable negligence if it contributed to the happening of the accident, the causal connection being a jury question.

R. S. 55:7-1 provides that "Every tenement house and all the parts thereof, shall be placed and maintained in good repair." R. S. 55:8-19 requires that every tenement house situated on a street where there are water mains shall have running water supplied to every water closet, sink or other plumbing fixture and "the owner shall provide proper and suitable tanks, pumps or other appliances to receive and distribute an adequate and sufficient supply of such water to each fixture on every floor in the said house at all times of the year, during all hours of the day and night." Finally, R. S. 55:11-3 provides that "Every joint or several owner of any tenement house shall be jointly and severally liable for any violation of any provision of this subtitle."

Reading the foregoing provisions together, suitable "tanks, pumps or other appliances to receive and distribute an adequate and sufficient supply" of running water are a required part of a tenement house, every part of which "shall be placed and maintained in good repair." For violation of this duty, the owner is liable, regardless of the part of the building in which the violation occurs. *Board of Tenement House Sup. v. Bierman,* 88 *N. J. L.* 467 (*Sup. Ct.* 1916).

In *Evers v. Davis,* 86 *N. J. L.* 196 (*E. & A.* 1914), the court held that even though the liability provision of the Tenement House Act was penal in nature, the plaintiff in a civil action in negligence might show a violation of the act as evidence of the owner's failure to use due care. In this regard, it said:

"Upon common law principles, therefore, when the legislature has by public statute established a certain standard of conduct in order to prevent a danger that it foresaw, it has in this regard forewarned the 'ordinary prudent man' and through him the defendant in a civil action, whose conduct must always coincide with this common law criterion. Such danger, therefore, does not have to be proved

by the plaintiff, since there is no longer room for a reasonable difference of opinion, for by his breach of the statute the defendant, through his common law conscience, is charged with knowledge that if injury ensues he will have acted at his peril."

The same court, construing the act in *McNamara v. Mechanics Trust Co.,* 106 *N. J. L.* 532 (*E. & A.* 1929), observed:

"Whatever benefit the tenant in a civil action derives from the statute in question must be through the common law action of negligence, because no civil action or right of action is given by said statute, and the effect is, that where the statute is penal in character, and a right of action is predicated on the failure to perform the duty imposed thereby, the action is governed by the ordinary rules of negligence, except that the violation of the statute operates as the basis of the defendant's liability. The defendant retains all the defenses appropriate to an action of negligence that are not affected by the statute; hence, to recover in a private action for an omission of a statutory duty, the plaintiff must show that the omission was a negligent one."

■ In the present case, the Appellate Division, relying on the cited authorities, held the owner's failure to maintain the heating apparatus in operable condition was a violation of the statute and, if shown to be the result of negligence on his part, was a fact the jury might properly consider in determining the question of his liability for the injuries sustained. It, therefore, concluded the case should have been submitted to the jury and, accordingly, reversed the judgment of the trial court. We are in accord with these views and find no error in this respect.

The court below considered and discussed the question of the landlord's retention of control of the instrumentality which caused the injury and reviewed the pertinent holdings in this State and elsewhere.

■ Where the landlord retains portions of the premises under his control and supervision he is, with respect to such portions:

" '* * * under the responsibility of a general owner of real estate who holds out an invitation to others to enter upon and

use his property, and is bound to see that reasonable care is exercised to have the passageways and stairways reasonably fit and safe for the uses which he has invited others to make of them.' *Siggins v. McGill, supra.*" *White v. Ellison Realty Corp.*, 5 N. J. 228 (1950).

That rule was extended in *Monohan v. Baime*, 125 N. J. L. 280 (*E. & A.* 1940), to include radiators located within the demised premises but which were connected with and a part of a central heating system over which the landlord retained control.

Here, there was no express reservation of control over the water jacket and storage tank by the landlord. They were, however, connected with and part of the plumbing system of the building, supplying running water to the apartment as required by the statute, and, except· as part of such system, had no utility. The tenant did not pay for the water thus supplied, permitting the strong inference the landlord assumed this obligation.

There are extrinsic circumstances not sufficient in themselves to raise the issue of retention of control but which, considered together with other facts in the case, create a question for the determination of the jury.

The earlier repairs of the equipment made under the same lease by the defendant's predecessor in title and the promise made by the defendant to repair the water heater when the tenant again complained of its condition, taken in conjunction with these other facts, cannot as a matter of law be conclusively presumed to have been the result of a mere request but might be deemed an acknowledgment of the owner's responsibility.

In *Dubonowski v. Howard Savings Institution*, 124 N. J. L. 368 (*E. & A.* 1939), the landlord promised to repair a stairway used only by the tenant. The repairs were not made and the tenant was injured. The court reversed a judgment of non-suit, holding:

"It was not the province of the trial court to infer that because the plaintiff requested that the repairs be made, that the landlord

had undertaken to make them solely because of this request and not out of a realization of responsibility."

Finally, it is argued the repairs made by the owner after the accident are not evidence of control sufficient to take the question to the jury. This would be true if such proofs stood alone. As stated in *Spinelli v. Golda,* 6 *N. J.* 68 (1950):

"It is only where there is an actual controversy as to the measure of control retained by the landlord arising from the letting, its terms and conditions, or from extrinsic circumstances, that evidence of subsequent repairs is admissible to assist the jury in deciding the issue thus presented."

The repairs made by the defendant subsequent to the explosion of the stove are not the only evidence from which his control might be inferred by the jury. There are, in addition, the other indicia we have already discussed—the installation of the fixture as a part of the plumbing system of the building, the fact the tenant did not pay for the water supplied to his apartment, the repairs previously made by the owner, and the unfulfilled promise by the defendant to make further repairs. These are sufficient to give rise to an "actual controversy" within the meaning of the *Spinelli* case.

The defendant urges there is nothing in the record to show the water pipes in this apartment were not tapped directly into the street mains and so were separate from the plumbing system of the building. True, the plaintiff's proofs in this respect are extremely meager but are sufficient to create an inference which the defendant would then have an opportunity to rebut by appropriate evidence. It might fairly be inferred that in a multi-family dwelling, where water from the public mains was not metered to the individual apartments but was supplied without charge to the tenants, the water supply and the plumbing necessary to maintain it were common facilities under the control and supervision of the landlord. On a motion to dismiss, the court will adopt the inference most favorable to the party against whom the motion is made. *Dubonowski v. Howard Savings Institution, supra.*

██ ██ Whether the defendant was guilty of a violation of the Tenement House Act constituting evidence of his negligence within the principle enunciated in the *Evers* and *McNamara* cases, *supra,* and whether the violation was a contributing cause of the plaintiff's injuries, were jury questions. So, also, was the issue of the retention of control over the heating equipment and the water supply. As there was sufficient evidence to require the submission of the case to the jury for its determination, the granting of the defendant's motion for dismissal was error.

The judgment of the Appellate Division is affirmed.

*For affirmance*—Chief Justice VANDERBILT and Justices CASE, HEHER, WACHENFELD and ACKERSON—5.

*For reversal*—Justices OLIPHANT and BURLING—2.