Audrey WHETZEL, Frederick Whetzel,
Jr., and Frederick Whetzel,
Appellants,

v.

JESS FISHER MANAGEMENT CO.,
Appellee.

No. 15287.

United States Court of Appeals
District of Columbia Circuit.

Argued Jan. 27, 1960.

Decided July 14, 1960.

Petition for Rehearing En Banc
Denied Sept. 14, 1960.

Mr. Daniel I. Sherry, Washington, D. C., with whom Mr. Eugene X. Murphy, Washington, D. C., was on the brief, for appellants.

Mr. Richard W. Galiher, Washington, D. C., with whom Mr. William E. Stewart, Jr., Washington, D. C., was on the brief, for appellee.

Before WILBUR K. MILLER, BAZELON and WASHINGTON, Circuit Judges.

BAZELON, Circuit Judge.

In Bowles v. Mahoney, this court adhered to the common-law rule that "absent any statutory or contract duty, the lessor is not responsible for an injury resulting from a defect which developed during the term." [1] Since that case was decided, the Commissioners of the District of Columbia have promulgated regulations concerning maintenance and repair of residential property. The primary question here presented is whether these regulations impose a "statutory * * * duty" on the lessor not presented in Bowles v. Mahoney. We conclude that they do.

The issue arises upon an appeal from a summary judgment entered against the plaintiffs below. Their amended complaint alleged that on March 1, 1956, Audrey Whetzel rented an apartment from the appellee for $75.00 per month upon a one-year lease which did not affirmatively place the burden of repairs, other than those caused by the tenant's negligence, on either party.[2] On June

1. 1952, 91 U.S.App.D.C. 155, 159, 202 F.2d 320, 323, certiorari denied 1953, 344 U.S. 935, 73 S.Ct. 505, 97 L.Ed. 719.

2. The lease provided that the lessee would "keep the premises in good order and condition and surrender the same at the expiration of the term herein in the same order in which they are received, *usual* wear and tear and damage resulting from acts not caused by the Tenant's negligence excepted." (Emphasis supplied.) The landlord reserved the right of access to the premises "at any time for the purpose of inspection * * * or for the purpose of making any repairs the landlord considers necessary or desirable." The tenant agreed to give the landlord "prompt notice of any de-

30, 1956, four months after she entered into possession, the entire bedroom ceiling fell, causing the injuries of which she complains.[3] The principal theory of her action is that the appellee, with knowledge of the defect, negligently permitted the ceiling to remain in an unsafe condition.[4]

## I. The Applicable Law

Appellant contends that the Housing Regulations establish a standard of conduct for the landlord, which, if negligently breached, allows an injured tenant to recover. They rely heavily on the landmark case of Altz v. Lieberson, 1922, 233 N.Y. 16, 134 N.E. 703, 704.

That case also involved a tenant injured by a falling ceiling. Judge Cardozo, writing for the New York Court of Appeals, held that the New York Tenement House Law, which provided that "every tenement house and all the parts thereof shall be kept in good repair," thus "changed the ancient rule" and imposed upon landlords a duty that "extends to all whom there was a purpose to protect." That statute did not specify who had the duty of repair; nor did it speak of tort liability. It only authorized penalties in criminal enforcement proceedings.[5] Nevertheless, the court held that:

> The Legislative must have known that unless repairs in the rooms of the poor were made by the landlord, they would not be made by anyone. The duty imposed became commensurate with the need. The right to seek redress is not limited to the city or its officers.

Other jurisdictions have accepted the view that regulations which explicitly or implicitly require a landlord to repair may render him liable for injuries resulting from a failure to comply.[6] In-

---

fects or breakage in the structure, equipment or fixtures of said premises," and promised not to make structural alterations or additions without permission.

For a discussion of the effect of statutes requiring the landlord to repair in cases where a lease places the duty of repair squarely upon the tenant, see Feuerstein & Shestack, Landlord and Tenant—The Statutory Duty to Repair, 45 Ill.L.Rev. 205, 220 (1950). Cf. Michaels v. Brookchester, Inc., 1958, 26 N.J. 379, 140 A.2d 199, 204.

3. Mrs. Whetzel's husband, a co-plaintiff, sued for medical expenses and loss of consortium. Her son, also a co-plaintiff, claimed injury through loss of his mother's support, maintenance and attention. They have also appealed from summary judgment. Since their right to recover is contingent upon hers, we will, for the sake of simplicity, treat the case as if Mrs. Whetzel were the sole appellant.

4. The amended complaint also alleged that the appellee (1) negligently failed to warn appellant of the latent defect, of which it had knowledge; (2) fraudulently misrepresented the premises as fit for occupancy; (3) negligently performed an agreement to redecorate, and to undertake the necessary plastering; and (4) breached the agreement to redecorate and plaster. On this appeal appellants urge only that the complaint was im-

properly dismissed because of the duty imposed by the Housing Regulations. For that reason we do not consider the other counts of the amended complaint.

5. New York Tenement House Act, New York Sess.Laws 1909, ch. 99, § 124.

6. Rimco Realty & Investment Corp. v. La Vigne, 1943, 114 Ind.App. 211, 50 N.E.2d 953 (Landlord liable for loss caused by fire originating in a garbage chute, such chutes being illegal in tenement houses); Morningstar v. Strich, 1950, 326 Mich. 541, 40 N.W.2d 719, 721, (Owner liable for injuries resulting from defective radiator under statute providing that "every dwelling * * * shall be kept in good repair by the owner"); Evers v. Davis, 86 N.J.L. 196, 90 A. 677 (1914) (Complaint alleging that death resulted from absence of a fire escape and that failure to provide fire escapes violates the Tenement Housing Act states a cause of action against owner); Daniels v. Brunton, 1951, 7 N.J. 102, 80 A.2d 547, 549 (Owner liable for injury in demised premises under statute providing that "Every tenement house * * * shall be * * * maintained in good repair" and rendering owner criminally responsible for breach thereof); Michaels v. Brookchester, Inc., 1958, 26 N.J. 379, 140 A.2d 199 (Same); Doster v. Murr, 1937, 57 Ohio App. 157, 12 N.E.2d 781 (Owner of building leased to

deed, in our own case of Hill v. Raymond, 1935, 65 App.D.C. 144, 81 F.2d 278, we held that building regulations establishing certain standards for interior stairways were admissible as evidence of a landlord's negligence in failing to illuminate and to maintain a common stairway. See also Nielsen v. Barclay Corp., 1958, 103 U.S.App.D.C. 136, 138 note 8, 255 F.2d 545, 547 note 8.[7]

The view expressed in these cases is fully consistent with "the almost universal American and English attitude * * * that where legislation prescribes a standard of conduct for the purpose of protecting life, limb, or property from a certain type of risk, and harm to the interest sought to be protected comes about through breach of the standard from the the risk sought to be obviated, then the statutory prescription of the standard will at least be considered in determining civil rights and liabilities." 2 Harper & James, Torts 997 (1956). See also Restatement, Torts § 286 (1934); Prosser, Torts 152–64 (2d ed. 1955); Thayer, Public Wrong and Private Action, 27 Harv.L.Rev. 317 (1914).

This axiom of tort law tacitly recognizes that the continued vitality of the common law, including the law of torts, depends upon its ability to reflect contemporary community values and ethics. Holmes, The Common Law 1, 120–21, 149, 162–63 (1881); Cardozo, The Nature of the Judicial Process 24–25, 108 (1921); O'Meara, Natural Law and Everyday Law, 5 Natural Law Forum 85 (1960). An essential element of tort liability is the breach of a duty of care owed. Palsgraf v. Long Island R. R., 1928, 248 N.Y. 339, 162 N.E. 99, 59 A.L.R. 1253. Whether or not a duty of care exists is, basically, a question of law. Harper & James, Torts § 18.8 (1958). A penal statute which is imposed for the protection of particular individuals establishes a duty of care based on contemporary community values and ethics. The law of torts can only be out of joint with community standards if it ignores the existence of such duties. See Evers v. Davis, 1914, 86 N.J.L. 196, 90 A. 677; Morris, The Role of Criminal Statutes in Negligence Action, 49 Colum. L.Rev. 21 (1949).

The courts have not agreed, however, on the precise effect to be given a breach of a statute. A majority of American courts hold that the unexcused violation of a statute which is intended to protect a class of persons, of which the plaintiff is a member, against the type of harm which has in fact occurred is negligence *per se.* That is to say, such violation is negligence as a matter of law and the jury must be so instructed. Prosser, Torts 161 (1955). But a substantial and growing number of jurisdictions hold that violation of a penal statute is "only evidence of negligence which the jury may accept or reject as it sees fit." Ibid.

a single tenant liable for injury caused by absence of a stairway hand-rail under statute providing that "owner * * * lessees * * * or proprietors" shall provide and maintain such fixtures); cf. Tvedt v. Wheeler, 1897, 70 Minn. 161, 72 N.W. 1062; Beard v. General Real Estate Corp., 10 Cir., 1956, 229 F.2d 260.

Contra: Chambers v. Lowe, 1933, 117 Conn. 624, 169 A. 912, 913 (Legislature did not intend that statute providing that tenements "shall be kept in good repair" should render owner liable for injuries occurring in parts of building not used in common); Johnson v. Carter, 1934, 218 Iowa 587, 255 N.W. 864, 93 A.L.R. 774 (Same); Garland v. Stetson, 1935, 292 Mass. 95, 197 N.E. 679 (Same); Corey v. Losse, Mo.1937, 297 S.W. 32 (Ordinance providing that owner or les-

see shall keep tenement in good repair could not constitutionally impose tort liability upon owner).

See generally, Feuerstein & Shestack, Landlord and Tenant—The Statutory Duty to Repair, 45 Ill.L.Rev. 205 (1950); Annotation, 17 A.L.R.2d 704 (1951).

7. In a case imposing tort liability upon landlords for injuries resulting from repairs which they or their contractors negligently perform, we said, "There is a practical as well as a logical reason [for this result] * * *. Today insurance * * * is available. Liability for an unsafe condition of the premises no longer is a substantial hardship." Bailey v. Zlotnick, 1957, 80 U.S.App.D.C. 117, 149 F.2d 505, 507, 162 A.L.R. 1108.

Commentators have pointed out that the *per se* rule may create serious rigidities and inequities. See, e.g., 2 Harper & James, Torts § 17.6 (1958); Morris, The Relation of Criminal Statutes to Tort Liability, 46 Harv.L.Rev. 453 (1933). Strictly applied, the *per se* rule can, for instance, render negligent as a matter of law a defendant who has taken all due precautions,[8] and bar recovery of a plaintiff who is likewise free from fault in all but a technical sense. Prosser, Torts 162–63 (1955); Morris, The Role of Criminal Statutes in Negligence Actions, 49 Colum.L.Rev. 21, 29 (1949); Prosser, Contributory Negligence as a Defense to a Violation of Statute, 32 Minn.L.Rev. 105 (1948). Courts adhering to the *per se* rule have generally recognized its inadequacies and developed such doctrines as "statutory purpose" and "justifiable violation" in an effort to return to the jury responsibility for determining whether reasonable care was exercised in the circumstances.

This jurisdiction has adopted these exceptions. In a leading case, we held that "violation of an ordinance intended to promote safety is negligence. If by creating the hazard which the ordinance was intended to avoid, it brings about the harm which the ordinance was intended to prevent, it is a legal cause of the harm." Ross v. Hartman, 1943, 78 U.S.App.D.C. 217, 218, 139 F.2d 14, 15, 158 A.L.R. 1370.[9] Accord, Danzansky v. Zimbolist, 1939, 70 App.D.C. 234, 105 F. 2d 457; Richardson v. Gregory, No. 15576, 108 U.S.App.D.C. 263, 281 F.2d 626.

The doctrine of statutory purpose was subsequently refined in Peigh v. Baltimore & O. R. R., 1953, 92 U.S.App.D.C. 198, 200, 204 F.2d 391, 393, 44 A.L.R.2d 671, where we pointed out that "the doctrine of negligence *per se* is one which must be applied cautiously, with an eye to essential fairness. If its use in a particular case tends to produce liability based not on real fault, or on any real departure from standards of prudent conduct, but only on a technicality, the courts are justifiably reluctant to apply it." There each party contended that the other was negligent as a matter of law. We held the doctrine of negligence *per se* inapplicable to the defendant's illegal conduct (leaving a boxcar on the street for an unreasonable length of time) because the prime purpose of the regulation was, in our view, to expedite traffic and commerce and not to protect passing motorists.[10] Such violation was, however, admissible as evidence of negligence. With respect to the plaintiff's possible violations of regulations requiring him to drive at a not "imprudent speed" and to stay "as closely as practicable" to the right-hand side of the road, we held that these were safety regulations, and that violation would be contributory negligence *per se*. But we further held that inasmuch as these regulations turned upon reasonableness and did not establish "precise and rigid standards," the question whether a violation had in fact occurred was for the jury to determine.

Thereafter, in Hecht Co. v. McLaughlin, 1954, 93 U.S.App.D.C. 382, 214 F.2d

---

8. Harper & James give the example of a defendant whose automobile tail lights go out, despite all due precaution, shortly before an accident. Harper & James, Torts 999 (1958).

9. There we found that a defendant, who had left his automobile unlocked in violation of traffic regulations, was negligent as a matter of law and liable for injuries sustained by third persons at the hands of one who stole the car.

10. The leading case concerning injuries which were not within the intent of the statute violated is Gorris v. Scott, L.R.

9 Ex. 125 (1794). There defendant violated a statute requiring carriers by water to provide separate pens for livestock. During a storm plaintiff's sheep were washed overboard. It was clear that the pens required by statute would have prevented the loss of the sheep, but the defendant was exonerated, because, " * * * as is recited in the preamble, the act is directed against the possibility of sheep or cattle being exposed to disease on their way to this country. * * * But the damage complained of here is something totally apart from the object of the act of Parliament."

212, we went one step further toward the doctrine of evidence of negligence. There the vestibule doors of defendant's department store were constructed in violation of District of Columbia Building Regulations. It was clear that the purpose of the regulation was to promote safety and that plaintiff was a member of the class to be protected. Although this would seem to meet the standards of the Peigh and Ross cases, supra, we held that violation of the regulations was not negligence *per se* because the defendant had secured the approval of architects and public authorities before installing its doors. We found this conduct was "indicative of care on the Company's part, quite inconsistent with the theory that violation of the regulation alone, all else aside, is negligence as a matter of law." Accordingly we held that:

"The question of the Company's negligence is to be decided on all relevant evidence, including violation of any safety regulation found to be applicable, and consequently admissible in evidence, but including also facts tending to show due care on the part of the Company in the selection and installation of the door." [93 U.S.App.D.C. at page 386, 214 F.2d at pages 215–216.]

Our holding was thus, in effect, although not in terms, that a jury might well find the defendant's violation "justifiable" or "excused." See 2 Harper & James, Torts 1007–11 (1958).

A review of these cases makes it clear that in this jurisdiction the rather rigid doctrine of negligence *per se* has been tempered by important limitations. Our law is clearly moving in the direction of leaving more and more of the question of negligence as derived from statutory standards for the jury to consider.

## II. The Instant Case

Turning to the instant case, we must determine the authority of the District of Columbia Housing Regulations and their effect upon the landlord's duty of care toward his tenants. The Housing Regulations were established and authorized by an order of the Commissioners of the District, dated August 11, 1955. They are arranged in eight chapters. Chapter 1 contains uniform definitions. Chapter 2 is the "Housing Code of the District of Columbia." It applies "to every premises or part thereof, occupied, used or held out for use as a place of abode for human beings," and lays down minimum standards of repair, sanitation and occupancy.[11] The following chapters of the Housing Regulations concern the licensing of premises in which a "housing business" is conducted. Housing Regulations § 3102.1. Chapter 3 contains general licensing regulations. It specifically incorporates chapters 1 and 2 which are also incorporated into the following chapters prescribing additional licensing requirements for rooming and boarding houses (chapter 4); tenements (chapter 5); apartment houses (chapter 6); hotels (chapter 7); and convalescent or nursing homes (chapter 8).

The D.C.Code authorizes the Commissioners to promulgate licensing regulations for dwellings containing more than two families, or rooming houses accommodating four or more persons.[12] Since

11. Housing Regulations § 2102.
The subchapters or "articles" thereof deal with the city's right of entry and penalties for noncompliance (article 210); minimum standards of natural light and ventilation, and the height of habitable rooms (article 220); minimum "standards of use and occupancy" to prevent overcrowding and unsanitary conditions (article 230); necessary hot water, plumbing, electrial, heating, sewage and other "facilities and services" (article 240); general "maintenance and repair" of the entire structure, including foundations, walls (both interior and exterior), ceilings, floors, windows, stairways and porches (article 250); "cleanliness and sanitation" in and around residential premises (article 260); and administrative enforcement procedures (article 270).

12. "The Commissioners of the District of Columbia are authorized and empowered to classify, according to use, method of operation, and size, buildings containing living or lodging quarters of every description, to require licenses for the busi-

the instant case involves an apartment building housing more than two families, these licensing regulations and the Housing Code (chapter 2) incorporated therein apply.[13]

Turning now to the Housing Regulations themselves, § 2101 declares:

"The Commissioners of the District of Columbia hereby find and declare that there exist residential buildings and areas within said District which are slums or are otherwise blighted, and * * * which are deteriorating and are in danger of becoming slums or otherwise blighted * * *.

"The Commissioners further find and declare that such unfortunate conditions are due, among other circumstances, to * * *: dilapidation, inadequate maintenance, overcrowding, inadequate toilet facilities, inadequate bathing or washing facilities, inadequate heating, insufficient protection against fire hazards, inadequate lighting and venti-

lation, and other insanitary or unsafe conditions.

\*  \*  \*  \*  \*  \*

"The Commissioners, accordingly, promulgate these regulations for the purpose of preserving and promoting the public health, safety, welfare, and morals." [14]

For each violation of these standards the regulations provide a maximum penalty of a $300 fine or ten days imprisonment. Housing Regulations § 2104. See D.C. Code, §§ 1–224a, 47–2347 (1951).

■ Upon whom are the duties specified by the regulations imposed? Some are upon the landlord alone. Under § 2304, "No persons shall rent or offer to rent any habitation, or the furnishings thereof, unless such habitation and its furnishings are in a clean, safe and sanitary condition, in repair, and free from rodents or vermin." At the very least, this imposes an obligation upon the landlord to put the premises in safe condition prior to their rental. See Tvedt v. Wheeler, 1897, 70 Minn. 161, 72 N.W. 1062, 1063.

ness operated in each such building as in their judgment requires inspection, supervision or regulation by any municipal agency or agencies, and to fix a schedule of license fees therefor in such amount as, in their judgment, will be commensurate with the cost to the District of Columbia of such inspection, supervision or regulation: *Provided, however,* That no license shall be required for single-family or two-family dwellings, nor for a rooming house offering accommodations for no more than four roomers." D.C.Code, § 47–2328 (1951).

13. It is unnecessary to decide whether there is statutory authority sufficient to support the application of chapter 2 to dwellings containing less than two families.

In briefs submitted in response to an inquiry from the court, however, the Corporation Counsel of the District of Columbia, along with the parties, found authority for such application in statutes authorizing the District Commissioners to:

"\*  \*  \* make and enforce all such reasonable and usual police regulations \*  \*  \* as they may deem necessary for the protection of lives, limbs, health,

comfort and quiet of all persons and the protection of all property within the District of Columbia," D.C.Code, § 1–226 (1951);
and to:

"\*  \*  \* make and enforce such building regulations for the said District as they may deem advisable." D.C.Code, § 1–228 (1951).

See also Hill v. Raymond, 1935, 65 App.D.C. 144, 81 F.2d 278, construing the building regulations promulgated under D.C.Code § 1–228 to require owners of multi-story buildings to "reconstruct" non-conforming stairways.

14. For a similar expression of community policy on the national level, see 50 Stat. 888 (1937), as amended, 42 U.S.C.A. § 1401, concerning the Federal low rent housing program: "It is declared to be the policy of the United States * * * to remedy the unsafe and insanitary housing conditions and the acute shortage of decent, safe, and sanitary dwellings for families of low income, in urban and rural nonfarm areas, that are injurious to the health, safety, and morals of the citizens of the Nation." See also 63 Stat. 413, 42 U.S.C.A. § 1441 (slum clearance and urban renewal).

■■ A second duty imposed upon the landlord alone is found in Article 240 dealing with facilities, utilities and service, "The owner or licensee of each residential building shall provide and maintain the facilities, utilities and services required by this part. Each such facility or utility shall be properly and safely installed, and be maintained in a safe and good working condition." Housing Regulations § 2401. Such facilities include hot water, plumbing, and heating (where not under the control of the occupant). For reasons which will appear from our discussion of the facts, infra, we think there was enough evidence that appellant's injuries proximately resulted from the landlord's failure to put the premises in safe condition prior to their rental, or from its failure to maintain the heating system in good repair, to permit the appellant to go to trial. Whether breach of these regulations is negligence *per se* or evidence of negligence will depend upon the facts developed at trial, applied in accordance with the standards which we have discussed.

The regulations also impose other obligations which are extended to both the landlord and tenant in order to achieve their broad purposes. Section 2301 provides that "No owner, licensee, or tenant shall occupy or permit the occupancy of any habitation in violation of these regulations." Section 2501 directs, *inter alia*, that:

> "Every premises accommodating one or more inhabitations shall be maintained and kept in repair so as to provide decent living accommodations for the occupants. This part of the Code contemplates more than mere basic repairs and maintenance to keep out the elements; its purpose is to include repairs and maintenance designed to make a premises or neighborhood healthy and safe."

And more specifically § 2504 requires:

> "Each interior wall or ceiling shall be structurally sound and free of loose plaster or other loose structural or surfacing material. Each

interior wall or ceiling shall be free of holes and wide cracks."

■ Thus it appears that § 2301 imposes upon the appellee a duty of care toward its tenants. This duty can be satisfied either by making the necessary repairs or by terminating use of the premises as a place of human habitation. Breach of that duty is, according to the principles which we have discussed, at least evidence of negligence.

But § 2301 also creates a duty of care which the appellant owes to herself. Breach of this duty is likewise at least evidence of contributory negligence. The question then is, does her contributory negligence so clearly appear from the face of the complaint that she is not entitled to go to trial? We think not.

In the first place, even if she were contributorily negligent *per se*, there would remain for the jury the question of proximate cause. Richardson v. Gregory, No. 15576, 108 U.S.App.D.C. 263, 281 F.2d 626. Second, the pleadings and affidavits which constitute the present record do not provide an adequate basis for determining whether the plaintiff-appellant was contributorily negligent as a matter of law by occupying non-conforming premises.

It is possible that facts may be developed at trial which would warrant a charge of negligence or contributory negligence as a matter of law. But we think that these are questions generally for the jury to resolve upon consideration of all the circumstances bearing on negligence and contributory negligence— including but by no means limited to the regulatory violation, reasonable efforts if any to comply with the regulations, and circumstances excusing their violation. Hecht Co. v. McLaughlin, 1954, 93 U.S. App.D.C. 382, 214 F.2d 212. '

For example, recovery would be barred if the jury finds that in the total circumstance of the case the tenant unreasonably exposed herself to danger by failing to vacate the premises or to keep them in repair. Some of the more obviously relevant circumstances would include the

lease provisions, if any, concerning the duty to repair and the landlord's right of entry for that purpose; the latent or patent character of the defect and tenant's knowledge, or opportunity for knowledge thereof; who repaired previous defects, if any; the amount of rental and term of lease, on the one hand, against the extent and nature of the defect and cost of repair on the other; and the bargaining position of the parties in entering into the lease.[15] In the present case, the jury would also consider, for example, the fact that the defective ceiling is a common wall with the floor of the apartment above, over which a tenant has virtually no control.

██ Appellee contends, however, that even if the jury must weigh the duty imposed by the Housing Regulations upon the lessee, summary judgment was nonetheless appropriate because there are uncontradicted affidavits in the record showing that appellee had no notice of the defect in the ceiling. We think actual knowledge is not required for liability; it is enough if, in the exercise of reasonable care, appellee should have known that the condition of the ceiling violated the standards of the Housing Code. Prosser, Torts 6 (1955).

We cannot say that upon a trial a jury could not reasonably find that appellee should have known of the condition of the ceiling. The bathroom ceiling, located just off the bedroom in appellant's apartment, had fallen and been repaired not long before appellant took possession. On New Year's Eve of 1956, just two months before appellant moved in, the livingroom ceiling of the adjoining apartment also fell. On April 1, 1956, appellant noticed a leak in her bedroom ceiling, and reported it to the janitor who was able to stop the leak by adjusting the radiator in the apartment above. But there is no evidence that he then inspected appellant's ceiling to determine if it had been weakened. Just before appellant moved in, appellee hired a contractor to inspect and repair the plaster in appellant's apartment. The contractor's affidavit, executed three years after the event, stated that he "carefully inspected and examined the entire apartment" and found "the plaster in the ceiling of the bedroom * * * in good sound condition." Appellant filed no counter affidavits. But in the circumstances of this case, such failure does not "compel acceptance as true of fact alleged in the movant's affidavits" for the purpose of summary judgment. Cellini v. Moss, 1956, 98 U.S.App.D.C. 114, 116, 232 F.2d 371, 373, quoting Subin v. Goldsmith, 2 Cir., 1955, 224 F.2d 753, 759. In view of the fact that the ceiling fell only four months after the alleged inspection, the jury might reasonably find that the inspection was negligently performed. Cf. Washington Loan & Trust Co. v. Hickey, 1943, 78 U.S.App. D.C. 59, 137 F.2d 677.

It follows from all that we have said that the District Court erred in granting summary judgment on the first count of appellants' amended complaint. We therefore reverse the judgment as to that count and remand with directions to proceed to trial. As to the other counts, we affirm since appellants make no point on appeal with respect to them.[16]

So ordered.

WILBUR K. MILLER, Circuit Judge, dissents.

15. See Kay v. Cain, 1946, 81 U.S.App.D.C. 24, 154 F.2d 305.

16. See note 4, supra.