Talley R. HOLMES, Jr., Petitioner,

v.

DISTRICT OF COLUMBIA BOARD OF APPEALS AND REVIEW, Respondent.

Nos. 79–304, 79–457.

District of Columbia Court of Appeals.

Argued Jan. 22, 1980.

Decided Sept. 30, 1980.

Henry A. Berliner, Washington, D. C., with whom Donald W. Evans, Washington, D. C., was on briefs, for petitioner.

Richard B. Nettler, Asst. Corp. Counsel, Washington, D. C., with whom Judith W. Rogers, Corp. Counsel, and Richard W. Barton, Deputy Corp. Counsel, Washington, D. C., at the time the brief was filed, were on brief, for respondent.

Before GALLAGHER, MACK and FERREN, Associate Judges.

GALLAGHER, Associate Judge:

This case involves consolidated petitions for review of two decisions by respondent, the District of Columbia Board of Appeals and Review (Board), upholding the noting of violations of the District of Columbia Housing Regulations. In No. 79–304, the Board sustained an order issued by the Department of Housing and Community Development to correct the noted violations, and in No. 79–457, the Board sustained the denial of an apartment house license by the Department of Economic Development based on the noting of such violations. In each case, petitioner, Talley R. Holmes, Jr., bases his challenge to the Board's actions on the contention that warrantless searches for the purpose of conducting housing inspections in individual, private apartment units violate the Housing Regulations. Therefore, he says, the Board's action is capricious and contrary to law. Petitioner also contends that the inspections violated his Fourth Amendment guarantee against unreasonable search and seizure. We affirm.

### No. 79–304

On June 23, 1978, petitioner applied for a certificate of occupancy for a three–unit apartment building owned by him and located at 1209 S Street, N.W. Pursuant to the application, inspections of the entire premises were carried out on July 11 and 18, 1978,[1] and 122 violations of the D.C. Housing Regulations were noted. By notice served on September 20, 1978, petitioner was ordered to correct the violations within 60 days.

Petitioner appealed the order to the Board, which heard testimony on February 14, 1979. He stipulated that the violations existed and were unabated as of February 2, 1979, and that the premises were occupied on the date of inspection, but contended nevertheless that the order to abate was invalid and unenforceable because the housing inspector was without authority to inspect individual living units in the premises absent a showing of probable cause.

In a decision issued on March 5, 1979, the Board ruled that the inspector was vested with authority to make periodic inspections of the subject premises and therefore knowledge of the violations was legally obtained.

### No. 79–457

This appeal involves the premises at 1839 13th Street, N.W., which petitioner owned and operated as a hotel and apartment house. On December 13, 1976, following an annual license inspection which included inspection of the individual apartment units, the Business Licenses and Permits Division of the District of Columbia Department of Economic Development notified petitioner that renewal of his apartment license was denied due to unabated Housing Code violations.[2]

Petitioner appealed to the Board and a hearing was held in the Spring of 1977.

1. These inspections were performed by a District of Columbia housing inspector who was unaware that the certificate of occupancy application, which triggered the inspection, had been granted on June 23, 1978, the same day the application was filed. The Department of Housing and Community Development indicated in a letter to the Board of Appeals and Review dated October 24, 1978 that the July inspection would be treated as the inspection for license renewal. Apparently as the result of an administrative error, the premises were inspected again for licensing purposes on September 8, 1978. Housing Code violation notices resulting from this inspection were served on October 11, 1978. Petitioner has raised no claim of error based on the treatment of these inspections as licensing inspections.

2. Notice of 351 Housing Code violations had been issued with respect to this premises on November 15, 1976.

Petitioner did not contest the existence of the violations but contended before the Board that the Chief of the Business Licenses and Permits Division was without authority to deny renewal of the license because the entry of the inspector into the individual housing units was illegal absent a warrant or a showing of probable cause to believe that violations of the Housing Code would be found within the individual units. Due to an administrative oversight, the Board did not issue its decision until April 11, 1979, when it held that the notation of the Housing Code violations, and the issuance of the order to comply with the Housing Regulations were the result of a legal and proper licensing inspection.

*The Regulatory Scheme* :

The District of Columbia Housing Regulations,[3] originally promulgated in 1955, are arranged in seven chapters.[4] Chapter one contains definitions and general provisions applicable to all premises used for residential purposes.[5] Chapter two is the "Housing Code of the District of Columbia." Promulgated "for the purpose of preserving and promoting the public health, safety, welfare, and morals,[6] the broad health, safety and sanitation" provisions of this chapter apply "to every premises or part thereof occupied, used or held out for use as a place of abode for human beings."[7] Chapter two also contains a right of entry provision which authorizes "[a]ny duly designated agent of the District of Columbia ... at all reasonable hours, lawfully to enter any premises for the purpose of enforcing these regulations."[8]

The succeeding chapters of the Housing Regulations deal with the licensing of premises in which housing businesses are conducted pursuant to D.C.Code 1973, § 47–2328.[9] Chapter three contains the general licensing regulations, with provisions for granting, revocation and posting of licenses, and for registration of managers.[10] Chapter three also contains an express direction that its provisions shall control when in conflict with the provisions of chapters one or two, and provides additional minimum standards for the operation of these buildings.[11] In addition, chapter three contains

---

3. 5G DCRR (1970).

4. An eighth chapter, affecting nursing homes, was repealed by the Community Residence Facilities Licensure Act of 1977, D.C. Law 2–35 § 201(b).

5. These provisions govern: heat, waterproof floors in toilets, yard drainage, custodial care in multiple dwellings, sheds and fences, accumulation of refuse, radio and television antennas, construction details and occupancy limitations for fire safety. §§ 1201–1210.

6. D.C. Housing Regs. § 2101.

7. D.C. Housing Regs. § 2102. Chapter two lays down minimum standards of repair, sanitation, and occupancy. The subchapters or articles thereof concern right of entry and penalties for noncompliance (Article 210); minimum standards of natural light and ventilation and the height of habitable rooms (Article 220); minimum standards to prevent overcrowding and unsanitary conditions (Article 230); necessary hot water, plumbing, electrical, heating, sewage and other facilities and services (Article 240); general maintenance and repair of the entire structure (Article 250); cleanliness and sanitation in and around residential premises (Article 260); and procedures for notice of violations, appeal and hearing, and permits (Article 270).

8. D.C. Housing Regs. § 2103.

9. D.C. Housing Regs. § 3101.

§ 47–2328. *Classification of buildings containing living quarters for licenses–Fees–Buildings exempt from license requirement.*

The District of Columbia Council is authorized and empowered to classify, according to use, method of operation, and size, buildings containing living or lodging quarters of every description, to require licenses for the business operated in each such building as in its judgment requires inspection, supervision or regulation by any municipal agency or agencies, and the Commissioner of the District of Columbia is authorized and empowered to fix a schedule of license fees therefor in such amount as, in his judgment, will be commensurate with the cost to the District of Columbia of such inspection, supervision or regulation: *Provided, however,* that no license shall be required for single–family or two–family dwellings, nor for a rooming house offering accommodations for no more than four roomers.

10. D.C. Housing Regs. §§ 3102, 3105, 3106, 3301–3303.

11. These standards apply to the operation of certain commercial enterprises in residential buildings, to operator–supplied mattresses, and

provisions governing inspection and right of entry which provide in pertinent part:

Sec. 3103—Inspection.

The Director of Licenses and Inspections, the Fire Chief, the Director of Public Health, and the Director of Public Welfare shall inspect every licensed housing business and any premises for which a housing business license application has been filed with the District of Columbia, and the Chief of Police shall inspect every licensed housing business as follows:

3103.1 The Director of Licenses and Inspections to determine conformity with the applicable provisions of the license laws and regulations, and to require that the building or part thereof comply with the applicable provisions of the laws and regulations enforced by him relating to buildings and appurtenances thereof.

\*   \*   \*   \*   \*   \*

Sec. 3104—Right of Entry.

3104.1 The District of Columbia, both prior to the issuance of a housing business license and during the license period, shall have the right at all reasonable hours to enter and inspect the premises occupied or to be occupied by such housing business. . . .

---

to locks and keys, stairs and hallways, waste receptacles, combustible refuse, heating and cooking appliances, egress facilities, exit and emergency lighting, and fire regulations. Article 320.

Chapters one, two and three are expressly incorporated into the remaining chapters of the Housing Regulations which prescribe additional licensing requirements for apartment houses (§ 6101) and hotels (§ 7101). *See Whetzel v. Jess Fisher Management Co.,* 108 U.S.App.D.C. 385, 390, 282 F.2d 943, 948 (1960).

**12.** Compare n.7 and n.11, *supra.* The regulations make no express distinctions in their application between common areas and individual dwelling units.

**13.** Petitioner repeatedly contends that before an inspector may enter an individual apartment for purposes of noting violations of the Housing Code, he must have probable cause to believe that violations exist therein, citing §§ 3101 and 2701 of the Housing Regulations. Section 2701 which is for all practical purposes identical in language to § 1301, states that "[w]hen-

## I

Petitioner contends the right of entry under the general licensing regulations is limited to an inspection for compliance with the articles of chapter three. The "laundry list" of regulated subjects in chapter three pertains generally to the common areas of the premises,[12] with the exception of the provisions regulating mattresses and heating and cooking appliances. Although conceding that consistent provisions of chapter two (the Housing Code) are incorporated by reference into chapter three, petitioner argues that the chapter three (the Licensing Regulations) right of entry is narrower in scope than the chapter two right of entry and therefore the chapter two provision is inconsistent with chapter three and inapplicable. Thus, petitioner asserts that entry into the individual dwelling units to inspect for compliance with the provisions of chapter two is not within the scope of a chapter three inspection. Conceding that, while on a chapter three licensing inspection, an inspector must enter the private areas to inspect mattresses and cooking appliances, petitioner nevertheless argues that the inspector may not inspect for or note chapter two (Housing Code) violations in these areas unless he had probable cause to believe that those violations existed *before* entry.[13]

---

ever any duly designated agent of the District of Columbia determines that there are *reasonable grounds* to believe that there exists a violation of any provision of this Code shall make a report to the Head of the Housing Division of the Department of Licenses and Inspection of the District of Columbia, who shall, in his discretion, give notice of such alleged violation to the person or persons responsible therefore." Petitioner interprets the "reasonable grounds" as a "probable cause" requirement *before* inspection. [Emphasis added.]

Apart from failing to explain why this "probable cause" requirement should apply only to the individual apartment units and not the common areas, petitioner ignores both the content and the context of §§ 1301 and 2701. Both are subsections under articles dealing with notice, appeals and hearings. It is apparent from this context and from the plain language of the subsections that "reasonable grounds" must exist before an inspector reports violations to his superior, who then sends a notice to the landlord. Reasonable grounds exist *after* the inspection.

Petitioner's argument is precluded by our decision in *Holmes v. District of Columbia Board of Appeals and Review*, D.C.App., 351 A.2d 518 (1976) in which we held that the Housing Code should be read into and enforced under the licensing provisions of the Housing Regulations. In *Holmes* we upheld the denial of an apartment house license based on unabated Housing Code violations relying on the language of § 2102 which makes the provisions of chapter two applicable to every premises used as a place of abode for human beings. To interpret chapter three's provisions as being applicable to the exclusion of chapter two would be contrary to the clear intent of the Housing Regulations. Thus, chapter three's right of entry and inspection provisions authorized the inspections complained of here.

## II.

■ Petitioner concedes that in applying for housing business licenses for his buildings he had impliedly consented to inspection of the common areas for compliance with both the Housing Code and the licensing regulations, and to inspection of the individual units for compliance with the licensing regulations. He argues, however, that a warrantless inspection of the individual units for compliance with the Housing Code violates his Fourth Amendment rights. The District of Columbia, citing *Rakas v. Illinois*, 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978), contends petitioner may not raise a Fourth Amendment challenge to an inspection of tenants' apartments because he lacks a legitimate expectation of privacy therein. We need not decide, however, the question of the extent to which a landlord possesses a protected Fourth Amendment interest by virtue of a property right in a premises in which the rights of exclusive possession and control have been surrendered to a tenant.[14] This case is governed by our decision in *John D. Neumann Properties, Inc. v. District of Columbia Board of Appeals and Review*, D.C. App., 268 A.2d 605 (1970). The land-

lord/petitioner in that case challenged warrantless inspections of individual units as violation of its Fourth Amendment rights. We held that in applying for an apartment house license, the petitioner "is taken to have consented to the inspection made mandatory under [D.C.Code 1973, § 47–2302]." *Id.* at 606.

Section 47–2302 commands that

No license shall be issued to any person for the operation of a business in any building or part thereof containing living or lodging quarters of any description required to be licensed under authority of this Act ... until the Director of Inspection ... ha[s] certified in writing to the Commissioner of the District of Columbia or his designated agent that the applicant for license has, as to such building or place, complied with all laws enacted and regulations made and promulgated for the protection of life and property.

*Neumann, supra*, authoritatively construed this statutory provision to imply consent by the licensee to inspections necessary to permit certification of compliance with regulations "made and promulgated for the protection of life and property." The Housing Code provisions contained in chapter two of the Housing Regulations were expressly so promulgated. Housing Reg. § 2101. Accordingly, we hold that in applying for housing business licenses, petitioner had effectively consented to inspection of his entire premises for compliance with all applicable provision of the Housing Regulations, including both the licensing regulations and the Housing Code. The decisions of the Board of Appeals and Review are

*Affirmed.*

---

14. We note that this case does not involve the right of a tenant to object to an administrative

search of his individual dwelling unit on Fourth Amendment grounds.