62 N.J. Super. 412 (1960)
163 A.2d 234
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT.
v.
METROPOLITAN IRON AND STEEL CO., INC., DEFENDANT-APPELLANT.
Superior Court of New Jersey, Bergen County Court, Law Division.
Decided June 20, 1960.
*414 Mr. Edwin C. Landis, Jr., Deputy Attorney General, for plaintiff (Mr. David D. Furman, Attorney General, attorney).
Mr. Gerald M. Freundlich, for the defendant (Messrs. Joelson & Freundlich, attorneys).
BROWN, J.D.C. (temporarily assigned).
The defendant Metropolitan Iron & Steel Co., Inc. was charged with a violation of N.J.S.A. 39:3-84. It was convicted of this offense in a trial had before the Bergen County District Court.
All facts necessary for a decision have been stipulated or are undisputed.
On January 25, 1960 the defendant's tractor and semi-trailer combination was operated on Route 46 in Palisades Park, having a combined weight of vehicle and load exceeding 60,000 pounds. The load was picked up in New York City. At the time of the arrest, the defendant's driver was en route from the George Washington Bridge to the nearest available scales in Bergen County. The arrest was not made in the course of a routine overloading check and because the trooper determined that weighing by portable scales at the intercept point would create a traffic hazard, he required the truck to be driven to scales owned and operated by the Lowe Paper Company at a place within 2 miles. The gross weight was there indicated to be 86,640 pounds.
It was further stipulated that the scales were maintained by the company for its business use. They were not generally available to the public, although the State was permitted *415 to use them for law enforcement purposes as in the present instance. The scales were last certified by State inspection on August 7, 1959 and were so inspected annually. The trooper who weighed the vehicle was a certified weighmaster.
The defendant first contends that the transaction is within the exception created by the third paragraph of N.J.S.A. 39:3-84.3. The load in question originated in New York City. It may be that the scales nearest available to the place of origin were actually the ones in Bergen County to which the vehicle was proceeding. There may have been no practical alternative to the route used by the defendant for the projected weighing-in. But the exception is so plainly limited by the Legislature to dispatch from a pick-up point within this State that the proviso cannot judicially be expanded.
There remains for determination the second contention of the defendant that the weight was not established in conformity with the requirements of N.J.S.A. 39:3-84.3 as specified in the following:
"Any State Police Officer or motor vehicle inspector having reason to believe that the size or weight of a vehicle and load is unlawful is authorized to require the driver to stop and submit to a measurement or weighing of the same by means of either portable or stationary scales and may require that such vehicle be driven to the nearest public scales in the event such scales are within 2 miles."
There appears to be no statutory definition of the term "public scales." The Weights and Measures law provides for the designation of a "public weighmaster." He is defined as one "who shall, for hire, weigh or measure any commodity, produce or article and issue therefor a weight certificate, which shall be accepted as the accurate weight, upon which the purchase or sale of such commodity is based." R.S. 51:1-73. Construction in pari materia suggests that the term "public scales" should reasonably be limited to those maintained for hire. Such a definition would, of course, not encompass the scales used here.
*416 But in the quest for legislative intention, the letter of the law should yield to the rationale of the expression. As the court said in Alexander v. New Jersey Power & Light Co., 21 N.J. 373 (1956):
"It is not the meaning of isolated words, but the internal sense of the law, the spirit of the correlated symbols of expression, that we seek in the exposition of a statute. The intention emerges from the principle and policy of the act rather than the literal sense of particular terms, standing alone." (21 N.J., at p. 378.)
The evident principle and policy of N.J.S.A. 39:3-84 et seq. is to protect the highway structures from damage caused by overweight vehicles. State v. Gratale Brothers Inc., 26 N.J. Super. 581 (App. Div. 1953). By the formula stipulated in N.J.S.A. 39:3-84.3, fines for violation are mandatory in nature being arithmetically correlated to excess poundage. Although an excess of up to 5% over one of the prescribed weight limits is tolerated, greater infractions are penalized by the graduated formula with the limit as a base, and subject to a minimum fine of $50.
The Legislature has left nothing to the court's discretion in the imposition of the penalty for overweight violations. It is the weighing device which not only determines the lawfulness of the gross weight but the quantum of penalty. In this context it is reasonable to infer a legislative intention to insure maximum protection against mechanical error. Such a degree of protection would presumably inhere in scales accessible at large and for that reason regulated by R.S. 51:1-83 et seq. The scales here utilized were not "public" in that sense and therefore not within the intendment of the statute, however accurate they may have been. Proof that scales are accurate will not make them "public scales"; but the fact that scales are public makes them presumptively accurate.
If the Lowe Paper Company scales were not public in nature, were they "stationary scales" within the meaning of the section? The term is not qualified by the word *417 "public." Is it limited in some other respect or will any non-portable scales satisfy the Legislature's directive? Again, the apparent sense and spirit of the statute imply that the measuring device must be reliable. The evidence sufficiently establishes the foundation for a reasonable inference that the Lowe scales were accurate on January 25, 1960. They were certified by a state inspection less than six months previously; they were since used by the company regularly for its business purposes; and it is undisputed that the state inspections for inaccuracy occurred no more frequently than once a year in routine. In the absence of proof to the contrary an inference of continuing accuracy would be legitimate.
But such a finding does not per se qualify the stationary Lowe scales as the kind contemplated by the language of the quoted paragraph. Implicit seems to be the requirement that the stationary scales be located at the point of interception. The authority of the State's agent is expressly limited by the wording of the section in question. He is
"* * * authorized to require the driver to stop and submit to a measurement or weighing * * * by means of either portable or stationary scales * * *." (Emphasis added)
The authorization is for enforcement action after the vehicle is stopped and the locus of the stationary scales would therefore seem to be limited to that place. The reciprocal duty of the driver to "submit" to the weighing appears to arise simultaneously. Under only two circumstances is there power to order a further movement of the vehicle. One instance is permitted by the language of the second paragraph of section 39:3-84.3 where the officer or inspector is enabled, after weighing, to require a violator "to stop the vehicle in a suitable place and remain standing" for partial unloading. Clearly implied here is the idea that the weighing must take place before this further driving movement can be ordered. The other condition where further movement of the vehicle can be required is where there is no *418 weighing at the stop point. In that case the officer or inspector
"* * * may require that such vehicle be driven to the nearest public scales in the event such scales are within 2 miles."
The foregoing are the express powers delegated to the enforcement agent to order truck movements after the stop. Is there an implied authority to direct the vehicle to be driven to "stationary scales"? If so, there is no restriction as to how far away they can be situated or that they be the "nearest." Would the Legislature limit the enforcement use of public scales to a two-mile radius and permit such use of "stationary scales" at any distance? Such a construction would be unreasonable. The absence of limiting language with respect to "stationary scales" is consistent with a context which appears to place the location of the "portable or stationary scales" at the place where the driver must "stop and submit to a * * * weighing."
The Legislature has made its policy of highway protection amply clear. It has provided precise standards for control and heavy penalties for infractions. At the same time, however, its enactment circumscribes enforcement power. There is a large area in which regulation is not allowed. A deliberate limitation, for example, is imposed by the arbitrary two-mile radius around public scales. If there is reason to believe that a violation exists and the only weighing device consists of public scales more than two miles distant no enforcement action can be taken. It is also noted that jurisdiction for arrest is denied to municipal and county police. These circumstances indicate a special concern because intrastate and interstate commerce are involved. The evident caution with which the Legislature has treated the subject of control dictates that he artificiali be strictly observed.
It is therefore concluded that, although there was an admitted overweight of vehicle and load in this instance, *419 the excess weight was not determined in the manner authorized by N.J.S.A. 39:3-84.3. The Lowe Paper Company scales were not "public scales" and this being so, the officer had no authority to require that the defendant's vehicle be driven there. They were not "stationary scales" within the meaning of the section because they were not located at the stop point. Accordingly, the complaint must be dismissed.