75 N.J. Super. 23 (1962)
182 A.2d 140
FORTUGNO REALTY COMPANY, A CORPORATION OF NEW JERSEY, PLAINTIFF-APPELLANT,
v.
SCHIAVONE-BONOMO CORPORATION, A CORPORATION OF NEW JERSEY, AND HERMAN T. STICHMAN, TRUSTEE OF HUDSON & MANHATTAN RAILROAD COMPANY, A CORPORATION OF NEW JERSEY IN BANKRUPTCY, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued January 29, 1962.
Decided June 7, 1962.
*25 Before Judges PRICE, SULLIVAN and LEWIS.
Mr. Adrian M. Unger argued the cause for appellant (Messrs. Milton M. and Adrian M. Unger, attorneys).
Mr. H. Curtis Meanor argued the cause for respondents (Messrs. Lamb, Langan & Blake, attorneys).
The opinion of the court was delivered by SULLIVAN, J.A.D.
Plaintiff Fortugno Realty Company appeals from a judgment of the Superior Court, Law Division, dismissing its complaint on motion of defendants at the close of the evidence. R.R. 4:51-2. Plaintiff charged that defendants Schiavone-Bonomo Corporation (S-B) and Herman T. Stichman, trustee in bankruptcy of the Hudson & Manhattan Railroad Company (H & M), negligently damaged plaintiff's motor truck scale by attempting to weigh a truck "carrying a total weight in excess of the legal limit of the said truck."
In assessing the propriety of the trial court's action we are limited to a determination as to whether the proofs were such as to raise issues of fact requiring submission to a jury. They must be so submitted in "any case in which reasonable men might honestly differ as to the conclusions *26 to be drawn from the evidence." J.L. Querner, etc., Inc. v. Safeway Truck Lines, Inc., 65 N.J. Super. 554, 560 (App. Div. 1961), affirmed 35 N.J. 564 (1961).
The facts viewed most favorably for plaintiff, giving it the "benefit of all legitimate inferences which are to be drawn therefrom" in its favor (Querner, supra, at p. 560), revealed that on December 2, 1957 plaintiff's motor truck scale, installed in 1946, was located on land in Jersey City which it had leased to C & C Trucking, Inc. (C & C), "an affiliate family corporation." C & C customarily used this scale in connection with its trucking business. On infrequent occasions, "maybe ten a year," S-B, a scrap dealer, was permitted to use the scale. On those occasions one Clinton Ruble, vice-president of C & C, who was a licensed public weighmaster, would do the weighing and for a fee of 50 cents would provide S-B with a certified weight slip. No charge was made for the use of the scale.
The truck, owned by S-B, was operated by its employee, who was accompanied by an H & M stock foreman.
The proofs showed that pursuant to a contract between S-B and H & M dated November 6, 1957, the former, on December 2 aforesaid, was removing three lots of motors and motor shells, purchased by it from H & M, from the latter's yards located a few blocks from plaintiff's premises. Pursuant to the aforesaid contract the motors and motor shells were to be removed by S-B and, at the seller's expense, weighed by a certified weighmaster to be designated by H & M. The purchase price of the scrap was dependent upon its weight so established. The contract estimated the weights of the three lots in gross tons which, when converted to pounds, were:
 "Lot A  11 General Electric Traction Motors,
 Model No. 259 complete."
 [37,408 pounds]
 "Lot B  3 General Electric Traction Motor Shells,
 Model No. 259."
 [6,048 pounds]
*27
 "Lot C  16 General Electric Traction Motors, Model No. 212 Complete
 (armatures and shells not all assembled)."
 [87,673.6 pounds]
To determine the "load" weight the procedure employed was first to weigh the empty truck to find the tare weight; the loaded truck was then weighed to ascertain the gross weight, the difference reflecting the net weight of the load.
The scale was built above a pit located adjacent to the building. The scale platform consisted of a "forty foot concrete deck." The "scale house" located inside the building contained a dial calibrated to 50,000 pounds and a "beam" marked to 30,000 pounds, but the manufacturer's rated capacity of the scale was 60,000 pounds with "ten to fifteen percent" tolerance. Plaintiff conceded that it did not advise defendants as to the scale's capacity either by direct statement or by posted notice.
On December 2 one Bruno Tomaszewicy, an employee of S-B, accompanied by an H & M stock foreman as aforesaid, drove the truck, then empty, onto plaintiff's scale where the weighing as designated by H & M was to take place. The truck was a three-axle dump truck, with double wheels on the rear axles. (Whether it was a six or ten-wheeled vehicle will be hereinafter considered.) The New Jersey registration certificate for the truck listed its "license load capacity" at "40,000 pounds." The manufacturer's weight rating was, gross weight, 45,000 pounds.
By use of the scale the tare weight of the truck was initially determined to be 19,620 pounds. The truck was then driven to the H & M yards and there loaded with "11 G.E. 259 motors complete" (its "first load" on the morning of December 2) and, upon its return to the scale, the gross weight was determined to be 55,580 pounds, the motors weighing 35,960 pounds. Following delivery of that material to the S-B property the truck was again driven on the scale at about 1:30 P.M. Its tare weight was then determined to be 19,500 pounds (the 120-pound differential *28 between the first and second weighings of the truck was stated to be caused by the consumption of gasoline in the truck's tank). Three "G.E. 259 motors complete" were then loaded on the truck and a gross weight of 25,300 pounds determined, the motors weighing 5,800 pounds. The truck then proceeded to the H & M yards where eight G.E. 212 motors with shells were added to the load. Tomaszewicy and Ernest H. Heinen, stock foreman of H & M, returned to the Fortugno scale for the third time that afternoon to weigh the truck and contents. Ruble said he did not see the truck come on the scale as he was then in the office, but that he "heard a boom outside" and saw "this red truck sitting on this scale" and "one end of the scale * * * down into the pit." Tomaszewicy, in his deposition, part of which was read into the record at trial, stated: "[W]hen I pull on the scale, when all wheels was on the scale, right away I hear something cracked and truck went down." The truck and contents were then taken to the S-B scale where the gross weight was determined to be 69,280 pounds.
At the conclusion of plaintiff's proofs the trial court reserved decision on defendants' motion for an involuntary dismissal. Defendants thereupon rested and moved for judgment of dismissal. The trial court, finding that there was "no evidence of any negligence of the defendants and that there" was "no issue for determination by the jury," granted defendants' motion.
Plaintiff urges several grounds for reversal of the judgment of dismissal. We now only consider the arguments that the trial court erroneously held that (a) N.J.S.A. 39:3-84 had no applicability to the issues involved herein, and (b) there was no proof of any negligence on defendants' part.
N.J.S.A. 39:3-84 is a section of the Motor Vehicle Act regulating the weight of commercial vehicles, including load, operating on any highway in this State. Under said section of the act the allowable maximum combined weight of a *29 three-axle, six-wheeled vehicle is 40,000 pounds. There is no specific provision covering a three-axle, ten-wheeled vehicle.
S-B argues that its truck was a three-axle, ten-wheeled vehicle, because its rear wheels were double wheels, and therefore the 40,000 pound limitation specified in the statute was inapplicable. We think it clear that the truck was a three-axle, six-wheeled vehicle within the meaning of the statute and subject to the 40,000-pound limitation. This is confirmed by the truck's New Jersey registration certificate.
The trial court, without deciding whether the S-B truck came under the three-axle, six-wheel provision, held the statute inapplicable to the instant case because it related solely to the operation of commercial vehicles on any highway in this State, whereas the accident to plaintiff's scale happened on its privately owned property.
We conclude that, as to defendant H & M, the dismissal of plaintiff's complaint was proper. But as to S-B, the owner and operator of the truck, we find that there was evidence of negligence which should have been submitted to the jury.
Concededly, the provisions of N.J.S.A. 39:3-84 were not directly applicable to the instant case for the reasons stated by the trial court. The purpose of this statute is the protection of our highway and highway structures. State v. Gratale Bros. Inc., 26 N.J. Super. 581 (App. Div. 1953). This incident occurred on private property. However, the charge of negligence was that plaintiff's scale had been damaged by an overweighted truck. In order to prove this allegation plaintiff had to establish some norm or standard fixing a reasonable weight for truck and load from which S-B had deviated. Certainly if the truck with its load was overweighted for operation on any highway in this State and liable to cause damage to the highway or highway structures, that fact would be relevant and material to a consideration of whether it was negligent *30 to drive such truck upon someone's driveway or truck scale and damage the same.
Aside from the provisions of N.J.S.A. 39:3-84, there was evidence that the weight of the truck and load greatly exceeded the license load capacity set forth on the New Jersey registration for the truck as well as the weight rating set by the manufacturer of the truck.
The conclusion is that there was evidence, actually presented or proffered, from which the jury could have found as follows: Plaintiff as an accommodation to S-B allowed S-B to use its scale to weigh trucks loaded with scrap metal. The scale had ample capacity to weigh any truck and load operating on the highway of this State which was not overweighted (save vehicles operating under special "constructor" license plates, not here involved). S-B loaded a truck with scrap metal far beyond the truck's registration load capacity, far beyond the manufacturer's weight rating, and far beyond the statutory weight limit for operating such truck on the highway. S-B either knew or should have known that the truck was so overweighted. The truck was then driven on plaintiff's scale without the making of any inquiry as to what the rated weight capacity of the scale was, or whether the scale could take such a heavy load. As a result of the combined weight of the truck and load, the scale was broken. On such findings, the negligence of S-B would have been established.
The judgment in favor of defendant S-B is set aside and the matter remanded for retrial. Costs to abide the outcome.
PRICE, S.J.A.D. (dissenting).
I desire to record my respectful disagreement with the conclusion reached by my colleagues and to express my reasons for such variance in opinion. In determining, as I do, that the judgment of the trial court should be affirmed, I desire not only to express the bases for my decision but to register my dissent from the thesis on which the majority opinion is predicated.
The pertinent facts are set forth in the majority opinion.
*31 Plaintiff urges several grounds for reversal of the judgment of dismissal entered on defendants' motion (R.R. 4:51-2). They are that: (a) the trial court erroneously held that N.J.S.A. 39:3-84 had no applicability to the issues involved herein and improperly excluded "expert testimony" concerning "the meaning of technical words in the [aforesaid] Statute under the custom and usage of the trucking industry"; (b) erroneously granted defendants' motion for judgment of dismissal as, so plaintiff asserts, "proof of negligence" existed apart from the provisions of the aforesaid statute; (c) improperly failed to give any weight to an alleged "admission of liability" by employees of defendant S-B; and (d) refrained from "ruling on plaintiff's claim that defendants breached an implied contract that they would not place more than the legal weight limit on plaintiff's scale."

I.
Plaintiff contends that the limitations imposed by N.J.S.A. 39:3-84 were pertinent to its claim that defendants' negligence caused the damage to plaintiff's scale. The statutory provisions, asserted by plaintiff to be applicable, are as follows:
"Subject to the provisions of section 39:3-82 and the axle weight limitations of this section, no commercial motor vehicle, tractor, trailer or semi-trailer shall be operated on any highway in this State having a combined weight of vehicle and load of more than (a) 30,000 pounds in the case of a 2-axle 4-wheeled vehicle, (b) 40,000 pounds in the case of a 3-axle 6-wheeled vehicle, (c) 60,000 pounds in the case of a tractor and semitrailer combination, and (d) 60,000 pounds in the case of a truck and trailer combination.
The gross weight imposed on the highway by the wheels of any 1 axle of a vehicle shall not exceed 22,400 pounds.
For the purpose of this Title the gross weight imposed on the highway by the wheels of any 1 axle of a vehicle shall be deemed to mean the total load transmitted to the road by all wheels whose centers are included between 2 parallel transverse vertical planes less than 40 inches apart, extending across the full width of the vehicle."
*32 The trial court's rejection of plaintiff's contention was based on its holding that the statute bars operations "on any highway in this state" of vehicles having a maximum gross weight in excess of the limits specified therein; that the particular sections have no application to the issue flowing from the damage to plaintiff's scale located on its privately owned property; and that the purpose of the statutory weight restrictions is to prevent damage to the highways by overweight vehicles.
To resolve the issue as to applicability of the aforesaid statute it is essential to determine its objective and the persons to be benefited thereby. In Lambe v. Reardon, 69 N.J. Super. 57, 68 (App. Div. 1961), certif. den. 36 N.J. 138 (1961), we said:
"Where a statute establishes a certain standard of conduct, one of the class for whose benefit the statute was enacted obtains its benefit in an action in negligence, if the breach of the statute was the efficient cause of the injury of which he complains. Moore's Trucking Co. v. Gulf Tire & Supply Co., 18 N.J. Super. 467 (App. Div. 1952), certification denied 10 N.J. 22 (1952)."
See also, Guse v. Martin, 96 N.J.L. 262, 265 (E. & A. 1921).
In State v. Gratale Brothers, Inc., 26 N.J. Super. 581, 584 (App. Div. 1953), we had occasion to consider the objective of N.J.S.A. 39:3-84. We there said:
"The evil or mischief intended to be suppressed by the statute in question was the loading of a vehicle in excess of the weight authorized by the terms of its certificate of registration. What the Legislature clearly had in mind at the time it amended and supplemented R.S. 39:3-84 in 1950 (L. 1950, c. 142), N.J.S.A., was the protection of our highways and highway structures  subject as they are to the extraordinary use and ever-increasing volume of commercial traffic crossing and recrossing our State  from damage by overweight vehicles. Cf. N.J.S.A. 39:3-84 and 84.4."
The aforesaid interpretation of the statute's purpose has been recognized in subsequent decisions. State v. E.H. Miller Transportation Company, Inc., 74 N.J. Super. 474 (App. *33 Div. 1962); State v. Metropolitan Iron and Steel Co., 62 N.J. Super. 412, 416 (Cty. Ct. 1960); State v. Levitan Interstate Transport, Inc., 58 N.J. Super. 345, 351 (Cty. Ct. 1959); and State v. Olean Transportation Corp., 39 N.J. Super. 236, 240-241 (Cty. Ct. 1956).
Added emphasis on the aforesaid objective of the section of the statute with which we are here concerned (N.J.S.A. 39:3-84) is supplied by the contrasting interpretation given to N.J.S.A. 39:4-50, in which section specific reference to highway operation is omitted. State v. Sisti, 62 N.J. Super. 84, 87 (App. Div. 1960).
It is incontrovertible that the purpose of the aforesaid statute (N.J.S.A. 39:3-84), regulating the weight of trucks and their respective load capacities, is to protect the public highways. The legislation was enacted for the benefit of organized government and not for the protection of individual citizens in connection with their privately owned property. Cf. Lambe v. Reardon, supra, 69 N.J. Super., at p. 68; Fielders v. North Jersey St. Ry. Co., 68 N.J.L. 343, 352 (E. & A. 1902).
Further proof that the statutory purpose is designed for the exclusive benefit of the government is furnished by N.J.S.A. 39:3-84.4, which authorizes the institution of a civil action by the "authorities in control of such highway or highway structure" for damages caused by violations of the statute.
Plaintiff in its brief contends that, even though the aforesaid statute (N.J.S.A. 39:3-84) does not provide for a "private right of action, it does afford plaintiff a claim of negligence against defendants," and in suggested support of that contention cites Evers v. Davis, 86 N.J.L. 196 (E. & A. 1914). That no support for plaintiff's contention is furnished by Evers is evident from the following language of Mr. Justice Garrison in that case at p. 204: "the plaintiff in an action of negligence obtains the benefit of the statute if he be one of the class for whose protection it was enacted."
*34 In passing, I desire to note that, in view of the conclusion I reach herein, I perceive no purpose to be achieved by resolving the opposing contentions of the parties as to the detailed truck classifications and the respective permissible gross weights, with reference to which subject a major portion of each brief is devoted. Drawing, as is required, all inferences in favor of plaintiff in assessing the propriety of the trial court's action, I have assumed that the S-B truck was loaded beyond its rated capacity as expressed in the aforesaid statute. However, as plaintiff is not a beneficiary of the statute, the assumed violation thereof by defendants is completely irrelevant to the issue of their negligence upon which plaintiff grounds its cause of action.
I turn to an analysis of the reasons on which the majority members of the court rest their conclusion that the provisions of N.J.S.A. 39:3-84 were, as against S-B, pertinent to the issues involved. It is conceded in the majority opinion that the aforesaid statutory provisions "were not directly applicable to the instant case for the reasons stated by the trial court," citing State v. Gratale Bros. Inc., supra, 26 N.J. Super. 581. However, noting that plaintiff charged that its "scale had been damaged by an overweighted truck," it is stated by the majority that "in order to prove this allegation plaintiff had to establish some norm or standard fixing a reasonable weight for truck and load from which S-B had deviated." From this premise the majority concludes that "if the truck with its load was overweighted for operation on any highway in this State and liable to cause damage to the highway or highway structures, that fact would be relevant and material to a consideration of whether it was negligent to drive such truck upon someone's driveway or truck scale and damage the same."
I respectfully disagree with the foregoing conclusion as well as the premise on which it is made to rest. The statutory provisions referable to the presence of overweighted trucks on highways establish no "norm or standard," a deviation from which may be deemed to constitute the basis *35 for a finding of negligence proximately causing the breaking of plaintiff's scale. I hold, as did the trial court, that there exists no relationship whatever between the violation of the aforesaid highway regulation and the negligence here charged against defendants. To conclude otherwise constitutes, in my opinion, a repudiation of the principles enunciated in the above-cited cases, all holding that to obtain the benefit of a statute a plaintiff must be "one of the class for whose protection it was enacted." Evers, supra, 86 N.J.L., at p. 204; Lambe, supra, 69 N.J. Super., at p. 68; Fielders, supra, 68 N.J.L., at p. 352; Moore's Trucking Co., supra, 18 N.J. Super., at p. 472. There is no doubt that the Legislature, by the aforesaid statute, has established a certain standard of conduct governing the operators of trucks on the highways in this State, but not only is plaintiff not one of those for whose protection the statute was enacted, but defendants alleged breach thereof was not the efficient cause or even a contributing cause of the injury of which plaintiff complains.
The majority opinion states that "the jury could have found" that "the scale had ample capacity to weigh any truck and load operating on the highways of this State which was not overweighted * * *," and that an inference of negligence arises because the "overweighted" truck was driven on plaintiff's scale without defendants' making "any inquiry as to what the rated weight capacity of the scale was, or whether the scale could take such a heavy load." Such a conclusion must of necessity rest on a presumption that scales normally will not take more than 60,000 pounds (the maximum combined weight of commercial truck and trailer combination, N.J.S.A. 39:3-84, "save vehicles [as noted in the majority opinion] operating under special `constructor' license plates, not here involved."). No such presumption is justified. From what source does it spring? If statutory highway limitations constitute a "norm or standard," and scales are used to determine whether highway operated trucks are overweighted, it seems to me far *36 more logical to presume that a scale would "take" more weight instead of less than the statutory limitation. However, as stated, I am convinced that an infraction of the statutory provisions has nothing whatever to do with the alleged negligence here involved. As a matter of fact, in negation of plaintiff's contention, it is noted that N.J.S.A. 39:3-84.3 even recognizes under certain conditions the propriety of the operation of an overweighted truck on the highway. It is therein provided, inter alia, that:
"No vehicle shall be deemed to be in violation of the overweight provisions of this act when, upon examination by an officer or inspector, the vehicle's dispatch papers show it is proceeding from its last preceding freight pick-up point within the State of New Jersey by a reasonably expeditious route to the nearest available scales or to the first available scales in the general direction towards which the vehicle has been dispatched, or is returning from such scales after weighing-in to the last preceding pick-up point."
How, then, can there be justification for saying that the existence or absence of an infraction stemming from highway operation has any possible bearing on alleged negligence in the contractual use of plaintiff's private scale here involved?

II.
Next, the majority opinion holds that a prima facie inference of negligence may arise from the fact that "the weight of the truck and load greatly exceeded the license load capacity set forth on the New Jersey registration for the truck [40,000 pounds]." Again, this is a statutory violation referable to the licensing of commercial vehicles based on the permissible gross weight of the vehicle and load, which statute fixes the fee therefor depending on such gross weight, and provides that it "shall be unlawful for any vehicle having gross weight of load and vehicle in excess of the gross weight provided on the registration certificate to be operated on the highways of this State." (N.J.S.A. 39:3-20) (emphasis supplied). For the same *37 reasons hereinbefore presented it is clear that the fact that the movement on a highway of a loaded truck, having a gross weight in excess of that set forth on the registration certificate, might constitute a violation of N.J.S.A. 39:3-20 and N.J.S.A. 39:3-84 has no relationship to the issue in the instant case. The fact that, to the knowledge of defendants, the "overweighted" S-B truck had a registration certificate  limitation of 40,000 pounds  should not have resulted in imposing an obligation on defendants to inquire of plaintiff the estimated capacity of its scale or, as the majority opinion holds, to have permitted an inference of negligence from their failure to make such inquiry.

III.
Furthermore, I find no justification for holding, as the majority opinion does, that the fact that the gross weight (truck and load) exceeded the "weight rating set by the manufacturer of the truck" has any bearing on the alleged negligence here involved.
There is nothing in the record to indicate that the manufacturer's rating (in this case 45,000 pounds) was designated by the manufacturer for any purpose other than to guard against possible damage to the truck itself by overloading it. Certainly its weight rating may not be considered as a basis for a third party's (in this case Fortugno's) cause for action under the circumstances here involved. The truck, with manufacturer's rating of 45,000 pounds, might be loaded beyond that estimated capacity and still have a gross weight less than the scale's capacity. Specifically applying that hypothesis to the case at bar would mean that the S-B truck, with a manufacturer's rating of 45,000 pounds, could, by that rating, be overloaded by 15,000 pounds and still be within plaintiff's scale capacity. This is conclusive proof, in my opinion, that the manufacturer's rating is completely irrelevant to the issue involved in the instant case.
*38 For all the reasons above set forth, such factor, in my opinion, may not result in imposing an obligation on defendants to make inquiry as to the scale's capacity or in raising an inference of negligence for jury resolution if such inquiry be not made.

IV.
The basic foundation of the majority opinion is that, because the truck was "overweighted" to the knowledge of S-B, there was a burden on said defendant to make inquiry as to the scale's rated capacity and specifically whether it could "take" the load then on the S-B truck. That responsibility (the failure to meet which the majority opinion finds raises a jury question as to the negligence of defendant S-B) is said to be based on the statutory provisions of N.J.S.A. 39:3-84, the load's gross weight in excess of its licensed load capacity, and its gross weight in excess of the truck manufacturer's weight rating, all of which, for the reasons previously set forth, I am convinced have no relationship to the issues here involved.

V.
As above noted (b), plaintiff further contends that, apart from the aforesaid statutory provisions, the proofs demonstrate negligence of the defendants on which it may ground its claim for damages, contending that "at least" the driver of the S-B truck "knew that the truck was overloaded." Because thereof, plaintiff asserts that a jury question was raised as to defendants' duty to inquire of plaintiff as to the scale's capacity. Absent the statute, the nonapplication of which has in my opinion been demonstrated, there was no "overloading of the truck" by defendants as far as their use of plaintiff's privately owned scale was concerned. The case is devoid of any proof that defendants knew or should have known, or were under a duty to inquire, as to the capacity of plaintiff's scale. No such duty arises automatically, *39 and plaintiff's contention that such duty exists, when analyzed, is in fact based only on its reiteration of the aforesaid statutory violation and its claim that the manufacturer's rating was relevant.

VI.
The asserted "admission of liability" by employees of S-B was properly treated by the trial court as of no evidential value in assessing the propriety of defendants' motion for entry of a judgment of dismissal. The issue arose because three alleged "representatives" of S-B came to plaintiff's property following the accident. Plaintiff claimed that one of them said, "Get estimates on it to repair it and send the bills to Schiavone and Bonomo Corporation." There was no proof whatever that the "representatives" of the defendant company had any authority to bind the company by an admission of liability in the premises. Hansen v. Eagle-Picher Lead Co., 8 N.J. 133, 145 (1951).

VII.
The final argument advanced by plaintiff that defendants breached an implied contract not to overload the S-B truck is merely a reiteration of its argument that the aforesaid statutory violation, the violation of the registration certificate, and the ignored manufacturer's rating constituted the evidence from which liability could be inferred. This contention of plaintiff is rejected for the reasons hereinabove expressed.
I am of the opinion that the judgment in favor of defendants should be affirmed.