NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NOS.  A-3399-20
      A-3400-20
      A-3401-20
      A-3402-20

SHAWN LABEGA,

  Plaintiff-Respondent,

v.

HETAL C. JOSHI, M.D.,
JONATHAN BORJA, PA-C,
MARY V. WHITECAVAGE, RN,
COLLEEN T. MURPHY, RN,
CAROLYN HUDAK, RN,
MIDDLESEX EMERGENCY
PHYSICIANS, P.A., JFK
MEDICAL CENTER, and
HACKENSACK MERIDIAN
HEALTH,

  Defendants-Appellants,

and

TEAMHEALTH HOLDINGS,
INC. a/k/a TEAMHEALTH,

  Defendant-Respondent.

_____

| APPROVED FOR PUBLICATION |
|:---:|
| **February 1, 2022** |
| **APPELLATE DIVISION** |

Argued November 15, 2021 – Decided February 1, 2022

Before Judges Messano, Accurso and Rose.

On appeal from an interlocutory order of the Superior Court of New Jersey, Law Division, Middlesex County, Docket No. L-3088-18.

Orlovsky Moody Schaaff Conlon Bedell McGann & Gabrysiak, attorneys for appellants Mary V. Whitecavage, RN, Colleen T. Murphy, RN, Carolyn Hudak, RN, JFK Medical Center and Hackensack Meridian Health in A-3399-20 (Anthony W. Liberatore and Michael M. McGann, on the brief).

Jay J. Blumberg argued the cause for appellant Jonathan Borja, PA-C in A-3400-20 (Blumberg & Wolk, LLC, attorneys; Jay J. Blumberg, of counsel and on the brief; Erika L. Mohr, on the brief).

Kenneth M. Brown argued the cause for appellant Hetal C. Joshi, M.D. in A-3401-20 (Weber Gallagher Simpson Stapleton Fires & Newby, LLP, attorneys; Kenneth M. Brown, of counsel and on the brief; Justyn M. Coddington and Jennifer Suh, on the brief).

Mark A. Petraske argued the cause for appellant Middlesex Emergency Physicians, PA in A-3402-20 (Dughi, Hewit & Domalewski, attorneys; Mark A. Petraske, of counsel and on the brief; Ryan A. Notarangelo, on the brief).

Bruce H. Nagel argued the cause for respondent Shawn Labega (Nagel Rice, LLP, attorneys; Bruce H. Nagel and Susan Fetten Connors, of counsel and on the briefs).

The opinion of the court was delivered by

ACCURSO, J.A.D.

We permitted defendants in this medical malpractice action leave to appeal the trial court's denial of their motions for partial summary judgment on

2

plaintiff's claims for breach of contract and hospital policy based on a third-party beneficiary theory as well as his claims for negligence per se for defendants' alleged violation of the hospital policies incorporated into those contracts.  Because well-established precedent makes clear neither cause of action is available to plaintiff in this case as a matter of law, we reverse.

The essential facts are easily summarized.  Plaintiff Shawn Labega, then forty-years-old, went to the Emergency Room at defendant JFK Medical Center[1] in January 2018 complaining of aching pain in his right ankle that had persisted for several days, although he couldn't recall injuring it.  Plaintiff was triaged by defendant Colleen T. Murphy, RN and assessed and evaluated by defendants Mary V. Whitecavage, RN and Carolyn Hudak, RN.  Whitecavage noted the nailbeds of two toes on plaintiff's right foot were cyanotic, and the toes were cool to the touch.

Plaintiff was examined by defendant Jonathan Borja, PA-C, who ordered pain medication and a muscle relaxer, as well as an x-ray, which showed no fracture.  Borja diagnosed plaintiff with a sprained ankle and discharged him with an air cast and recommendations for follow-up care.  Defendant Hetal C. Joshi, M.D. was the attending physician in the ER that day, responsible for

---

[1]  Defendant JFK Medical Center is also known as Community Hospital Group, Inc.; it is an affiliate of defendant Hackensack Meridian Health.

A-3399-20

supervising the physician assistants, including Borja. He did not examine plaintiff but discussed his care with Borja and signed off on the chart the following day. Both Joshi and Borja had contractual agreements with defendant North Jersey Emergency Physicians, PA d/b/a Middlesex Emergency Physicians, PA, the entity JFK contracted with to staff its emergency department.

Plaintiff returned to the ER five days later, again complaining of pain, and now cold, in his right foot. A vascular workup revealed a right popliteal occlusion from thrombus. When doctors were unable to restore blood flow, plaintiff underwent a below-knee amputation of his right leg.

Plaintiff sued defendant-appellants alleging medical negligence and, as to Middlesex, JFK and Joshi, vicarious liability for the negligent acts of their agents or employees. Three months before the end of extended discovery, plaintiff moved to file a third amended complaint to assert seven new counts alleging causes of action for breach of contract and negligence per se.

Specifically, plaintiff alleged the terms of express contracts entered into between JFK and Middlesex, and those between Middlesex and Joshi and Borja, as well as JFK emergency department policies, procedures, and protocols, required defendants to comply with specific terms and provisions governing patient care. Plaintiff further claimed that as a patient of

defendants, he was an intended third-party beneficiary of those contracts, policies, protocols and procedures; that defendants breached their express obligations under their contracts and violated JFK's emergency department policies, procedures, and protocols, and that those breaches and violations resulted in his injuries, thereby allowing him to recover damages. Plaintiff also alleged defendants were liable for negligence per se for violating JFK's policies, protocols and procedures incorporated into the contracts because those acts or omissions "violate standards of care of professional practice that govern and guide patient care at JFK's emergency department."[2]

---

[2] We summarize the proposed counts as follows:

Count 9: breach of contract against Joshi, for violating his physician independent contractor agreement with Middlesex by failing to comply with JFK's rules, obligations, policies and guidelines involving the care and treatment of plaintiff, a third-party beneficiary of the physician agreement;

Count 10: breach of contract against Joshi, for violating his physician agreement with Middlesex by failing to ensure that Borja's treatment and care of plaintiff, a third-party beneficiary of the contract, complied with all rules, regulations, and policies of JFK;

Count 11: breach of contract against Borja, for violating his employment agreement with Middlesex by failing to comply with JFK's policies, including but not limited to procedures, regulations, guidelines and

protocols of JFK's emergency department, in his treatment and care of plaintiff, a third-party beneficiary of the employment agreement;

Count 12: breach of contract against JFK and Middlesex, for violating their professional services agreement by failing to comply with all applicable hospital policies, procedures, protocols, and guidelines governing services provided by physicians in the emergency department, including but not limited to the JFK physician assistant policy with respect to the treatment and care of plaintiff, a third-party beneficiary of the professional services agreement;

Count 13: liability against JFK for breach of its emergency department policies and procedures known as "Emergency Department Triage Assessment," "Emergency Department RN Staff Qualifications," "Required Education RN," and "Quality Assurance Policy" through the negligence of persons and entities involved in the treatment and oversight of treatment of plaintiff, a third-party beneficiary of the JFK policies;

Count 14: liability of all defendants for negligence per se for violating JFK's policies, procedures, protocols and guidelines for patient care in JFK's emergency department incorporated within the professional services agreement between Middlesex and JFK, the physician agreement between Middlesex and Joshi, and the employment agreement between Middlesex and Borja "as those acts and/or omissions violate standards of care of professional practice that govern and guide patient care at JFK's emergency department";

Count 15: vicarious liability on the part of JFK, Middlesex, Joshi, and Borja "for any contractual

6

Although defendants had not opposed plaintiff's prior motions to amend his complaint, all but Middlesex opposed this motion, arguing plaintiff's breach of contract and negligence per se claims "are not recognized or appropriate under New Jersey law and, as such, amendment would be futile." See Notte v. Merchs. Mut. Ins. Co., 185 N.J. 490, 501 (2006) (noting futility is an exception to the rule that motions to amend are to be granted liberally, because if "the amended claim will nonetheless fail . . . , allowing the amendment would be a useless endeavor").

The motion judge disagreed. Deeming plaintiff's breach of contract claim actionable, the judge noted "contractual breaches can be and often are suggestive, and even clear evidence, of deviations from the standards of care." And he noted New Jersey law allows a third-party beneficiary to sue for breach of contract. N.J.S.A. 2A:15-2; Rieder Cmtys., Inc. v. Twp. of N. Brunswick, 227 N.J. Super. 214, 221-22 (App. Div. 1988) (noting the statute "merely restates established New Jersey law that third-party beneficiaries may sue upon a contract made for their benefit without privity of contract").

---

breaches and negligent acts on the part of" John Doe defendants.

In finding plaintiff had sufficiently pled a cognizable claim of negligence per se, the judge did not address plaintiff's proposed pleading of the cause of action, which was premised entirely on his allegation in count fourteen that defendants' breaches of the "[p]olicies, procedures, protocols and guidelines for patient care in JFK's emergency department" constituted "negligence per se as those acts and/or omissions violate standards of care of professional practice that govern and guide patient care at JFK's emergency department." Instead, the judge looked to plaintiff's allegation in count eight, also included in plaintiff's second amended complaint and thus not a new pleading, alleging Joshi's vicarious liability for Borja's conduct and care of plaintiff under the Physician Assistant Licensing Act, N.J.S.A. 45:9-27.10 to -27.28 and its implementing regulations, N.J.A.C. 13:35-2B.1 to -2B.19, and concluded they could support a cause of action for per se negligence.

In April 2021, defendants moved for partial summary judgment, collectively seeking dismissal of new counts nine through fifteen of the third amended complaint. Plaintiff opposed the motions and cross-moved for partial summary judgment on count eight asserting Joshi's vicarious liability for Borja's negligence by virtue of the Physician Assistant Licensing Act. The

8

judge granted plaintiff's motion for partial summary judgment on liability on count eight and denied defendants' motions.[3]

In explaining his ruling on defendants' motions in an oral opinion, the judge deemed it "not uncommon in medical malpractice/negligence cases to permit theories of breach of contract, third party beneficiary, and negligence per se claims to be asserted where implicated parties were or are required by contract to abide by hospital policies, procedures and protocols, in addition to statutory obligations."  He found plaintiff's third-party beneficiary claims "a fact-sensitive disputed issue that . . . should be [left] for the jury," despite the "'self-serving' language in the agreements that portended to instruct that the rights and obligations to be performed under those agreements were not intended to confer any rights upon third parties."

As to plaintiff's negligence per se claims, the judge relied on the findings he made in granting plaintiff's motion to amend, that "[t]he violation of a statute or regulation 'may be considered by a jury together with all of the evidence in determining issues of negligence[,]' and this proposition is 'subsumed by the overriding principle that the [] statutory violation, to be evidential, must be causally related to the happening of the accident,'" quoting

---

[3]  Defendant Joshi did not seek interlocutory review of the liability judgment on count eight, and it is not a part of this appeal.

<u>Mattero v. Silverman</u>, 71 N.J. Super. 1, 9 (App. Div. 1961). He concluded that "[g]enerally speaking, negligence per se can be asserted when there is a causal relationship between the negligence and the violation of the statute, regulation or [hospital] policy," and found the evidence here was not "so one-sided" as to permit defendants to prevail on their motions.

The judge rejected defendants' argument that plaintiff had "wrongfully conflated the issues of breach of contract, third-party beneficiary and negligence per se theories and causes of action with that of medical negligence," finding "if anything has been conflated here, it is [defendants'] claim that these allegations are somehow futile or non-actionable as a matter of law."

On appeal, defendants reprise their arguments to the trial court that plaintiff's third-party beneficiary and negligence per se claims are not actionable as a matter of law. They maintain the court's ruling is not supported by the facts or established law, and if left intact, will "rewrite the law in this area," exposing hospitals and healthcare providers to "new and almost limitless" claims. Plaintiff counters that notwithstanding "the panicked arguments" of defendants, the court's rulings "are not improper expansions of existing law," and "are instead common-sense explanations of well-settled law within the context of a unique and fact-sensitive setting."

A-3399-20

We review summary judgment de novo using the same standard that governs the trial court. Templo Fuente De Vida Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, 224 N.J. 189, 199 (2016). That standard requires the court to grant summary judgment when "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law." R. 4:46-2(c); Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 528-29 (1995). Because the trial court does not enjoy the advantage in discerning the law it does in discerning the facts, a reviewing court owes no special deference to the "trial court's interpretation of the law and the legal consequences that flow from established facts." Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995).

The trial judge proceeded under a misapprehension here. As plaintiff's counsel necessarily conceded at argument, it is not common "in medical malpractice/negligence cases to permit theories of breach of contract, third party beneficiary and negligence per se claims to be asserted where implicated parties were or are required by contract to abide by hospital policies, procedures and protocols, in addition to statutory obligations." As our Supreme Court has explained, "a patient generally has three avenues for relief

against a physician, namely, '(1) deviation from the standard of care . . .; (2) lack of informed consent; and (3) battery.'" Liguori v. Elmann, 191 N.J. 527, 548 (2007) (quoting Howard v. Univ. of Med. & Dentistry of N.J., 172 N.J. 537, 545 (2002)).

Breach of contract claims in a medical malpractice context are rare, limited as they are to cases involving a "special agreement" with a physician. See Perna v. Pirozzi, 92 N.J. 446, 465 n.4 (1983). The Court in Perna instructed "[w]here the essence of a cause of action is an allegation of the failure to provide medical care or to provide that care properly, a plaintiff should couch the cause as malpractice." Ibid. That is, of course, the essence of the claim here — that defendants failed to treat, or to treat properly, plaintiff's injured right ankle. It is only when "a doctor has made a special agreement to perform medical services" that "in an appropriate case, an action might also be for breach of contract." Ibid. See Murphy v. Implicito, 392 N.J. Super. 245, 264-69 (App. Div. 2007) (holding breach of contract could lie for alleged breach of surgeon's agreement to perform the plaintiff's spinal fusion surgery without use of cadaver bone).

Plaintiff's claim is not predicated on any "special agreement" with the hospital or health care providers he encountered in the emergency room at JFK. Instead, plaintiff asserts he is a third-party beneficiary of several policies

12

JFK has put in place to govern patient care in its emergency department and the contracts JFK has with Middlesex to staff the hospital's emergency department and Middlesex's contracts with Joshi and Borja, all of which require adherence to those policies. Plaintiff has not provided us with any authority in this State supporting a third-party beneficiary theory in a medical malpractice context, and we are aware of none.

Moreover, even were we convinced a third-party beneficiary theory made sense in the context of a medical malpractice action, which we are not, plaintiff did not establish the claim on the summary judgment record. As the Court explained in Broadway Maintenance Corp. v. Rutgers, State University, 90 N.J. 253, 259 (1982), "[t]he principle that determines the existence of a third party beneficiary status focuses on whether the parties to the contract intended others to benefit from the existence of the contract, or whether the benefit so derived arises merely as an unintended incident of the agreement."

In other words, "the real test is whether the contracting parties intended that a third party should receive a benefit which might be enforced in the courts." Ibid. (quoting Bor. of Brooklawn v. Brooklawn Hous. Corp., 124 N.J.L. 73, 77 (E. & A. 1940)). Although that common law principle has long been codified by statute, see N.J.S.A. 2A:15-2, neither the common law nor the statute goes "so far as to permit a suit upon contract to be maintained by

13

persons with whom the defendant never meant to enter into contractual relations." Brooklawn, 124 N.J.L. at 76 (quoting Styles v. F. R. Long Co., 70 N.J.L. 301, 305 (E. & A. 1904)). "If there is no intent to recognize the third party's right to contract performance, 'then the third person is only an incidental beneficiary, having no contractual standing.'" Ross v. Lowitz, 222 N.J. 494, 513 (2015) (quoting Broadway Maint., 90 N.J. at 259).

Divining the intent of a contract is ordinarily a question of law, Bosshard v. Hackensack Univ. Med. Ctr., 345 N.J. Super. 78, 92 (App. Div. 2001), making "[c]ases involving contract interpretations . . . particularly suited to disposition by summary judgment," CSFB 2001-CP-4 Princeton Park Corp. Ctr., LLC v. SB Rental I, LLC, 410 N.J. Super. 114, 119 (App. Div. 2009). "Absent ambiguity, the intention of the parties is to be ascertained by the language of the contract." Id. at 120. "If the language is plain and capable of legal construction, the language alone must determine the agreement's force and effect." Ibid. (quoting FDIC v. Prince George Corp., 58 F.3d 1041, 1046 (4th Cir.1995)).

Here, a review of the unambiguous language of the three contracts, provided as part of a confidential appendix, reveals no expressed intent on the part of the parties to those contracts, JFK, Middlesex, Joshi and Borja, to permit a patient such as plaintiff to sue to enforce the contracts' terms.

14

Underscoring that point, plaintiff has not directed us to any language in the contracts — beyond that obligating defendants to supply emergency services consistent with JFK's policies, State law and applicable national standards — supporting his third-party beneficiary claim.[4] See Broadway Maint., 90 N.J. at 262 (noting language in a multi-prime construction contract binding each contractor "to pay the damages of a fellow prime contractor is strong evidence that the injured prime contractor is an intended beneficiary who may enforce that promise").

There is no question but that the contracts obligated Middlesex, Joshi and Borja to render services in accordance with JFK's applicable bylaws,

_____

[4] For example, plaintiff alleges he was harmed by Middlesex's breach of its contractual obligation to

> cause physicians to make complete and appropriate medical record entries concerning any and all professional services rendered to any patient within the most stringent of those time limits imposed by law, the JFK Medical/Dental Staff Bylaws, the JFK Medical/Dental Staff's Rules and Regulations, or any JFK Policy of which the physician has received prior written notice, as the same may from time to time be in effect.

Although one can easily grasp that timely chart entries promote better patient care, plaintiff does not explain what it is about that language — or any language in the agreement — that evidences an intent by JFK and Middlesex to permit a patient to sue to enforce Middlesex's obligation to require physicians to make timely chart entries.

15

policies, rules and requests. That those policies are intended to — and likely do — promote patient care is also not to be doubted. But that only establishes patients of JFK as incidental beneficiaries; it is not enough to make those patients, including plaintiff, intended third-party beneficiaries of the contracts with the right to sue to enforce them. See Brooklawn, 124 N.J.L. at 76 ("'It is not enough that the plaintiff may be benefited by the performance of the contract. He can only maintain the action when the contract is made for him.'") (quoting Styles, 70 N.J.L. at 305); Styles v. F. R. Long Co., 67 N.J.L. 413, 414-21 (Sup. Ct. 1902) (holding the plaintiff injured on a poorly lighted footbridge could not sue the construction company for breach of its contract with the county to maintain a bridge for the accommodation of pedestrians with sufficient light so as to make it reasonably safe for public travel because action for breach of the contract "is not extended to third parties who, indirectly and incidentally, would be advantaged by its performance"). What is missing is any indication the contracting parties intended a patient treated in JFK's emergency room would have the right to sue to enforce those obligations imposed by the contracts.

None of the agreements purports to confer any rights on any third party. Each explicitly identifies its intended beneficiaries by stating it binds and inures to the benefit of the parties, their respective successors and any

16

permitted assigns, with Middlesex's agreement with Joshi further stating the agreement "is intended solely for the benefit of the parties" and that "[a]ll other parties, named or unnamed, shall have no rights or remedies . . . except as expressly otherwise agreed by the parties."  Middlesex's agreement with Borja goes even further.  Under the heading "<u>No Third Party Beneficiaries</u>," the agreement states:  "[n]othing in this Agreement, whether express or implied, is intended to confer any rights or remedies under or by reason of this Agreement on any persons other than the parties to it and their respective successors and assigns."

There is simply nothing in these contracts to suggest the contracting parties intended to create third-party rights in anyone; and clear language in Middlesex's agreements with Joshi and Borja expressly negates any intent to do so.  <u>See</u> <u>Broadway Maint.</u>, 90 N.J. at 260 (acknowledging the parties to a contract are free to "expressly negate any legally enforceable right in a third party").  While plaintiff and the trial court dismissed the language "portend[ing] to instruct that the rights and obligations to be performed under those agreements were not intended to confer any rights upon third parties" as "self-serving," that is hardly an indictment considering the contracting parties clearly intended agreements designed to serve only their own interests and no one else's.  As the Court in <u>Brooklawn</u> explained, it is the contracting parties,

who are, after all, "the persons who agree upon the promises, the covenants, the guarantees; they are the persons who create the rights and obligations which flow from the contract."  124 N.J.L. at 76-77.  It is their intent, clearly expressed in the language of the agreement — whether self-serving or not — that controls.

Plaintiff's new claim on appeal, inspired by comments of the trial judge, that Middlesex's agreement with Borja expressly eschewing any third-party rights in the contract "arguably violated public policy" is without sufficient merit to warrant discussion in a written opinion.[5]  See R. 2:11-3(e)(1)(E). Although our courts will not enforce a contract that is unlawful or violates public policy, Vasquez v. Glassboro Serv. Ass'n Inc., 83 N.J. 86, 98-99 (1980), there is nothing unlawful in contracting parties drafting an agreement so as to negate any legally enforceable rights in third-parties, Broadway Maint., 90 N.J. at 260, and plaintiff has not identified any public policy that would be violated by Middlesex's contract with Borja.  Accordingly, we will not consider the claim further.

---

[5]  In rejecting defendants' arguments on plaintiff's third-party beneficiary claim, the judge remarked "[i]t would be almost tantamount to . . . being unconscionable to find that patients treated in a hospital setting were not the beneficiaries of agreements that are entered into by a hospital and its healthcare providers."  The judge said "[t]hat would seem to violate public policy as a general proposition," although making clear he did not "find that as a matter of law."

Because the terms of the contracts are clear and unambiguous and offer no support for plaintiff's claim that he was an intended third-party beneficiary of the three agreements on which he sued, and there is nothing in the policies themselves to support his novel theory that he could sue the hospital for its alleged violation of its own policies as an intended third-party beneficiary, the court erred as a matter of law in finding the agreements ambiguous and denying defendants summary judgment dismissing counts nine through thirteen, as well as count fifteen (alleging defendants' vicarious liability for any contractual breaches or policy violations) of the third amended complaint.

If breach of contract claims in medical malpractice actions are rare, negligence per se claims are virtually non-existent. But see Di Giovanni v. Pessel, 104 N.J. Super. 550, 563 (App. Div. 1969) (violation of statutory standard of conduct mandating physician who certifies a person's insanity for purpose of involuntary commitment do so only on the basis of a personal examination is proof of deviation and negligence), aff'd in part and rev'd in part on other grounds, 55 N.J. 188 (1970).

Negligence per se is not often invoked in New Jersey generally because its application is so narrow. Braitman v. Overlook Terrace Corp., 68 N.J. 368, 385 (1975) (noting "[i]n this State the violation of a statutory duty of care is not conclusive on the issue of negligence in a civil action"). As the Court

explained in <u>Eaton v. Eaton</u>, "[o]rdinarily, the determination that a party has violated 'a statutory duty of care is not conclusive on the issue of negligence, it is a circumstance which the jury should consider in assessing liability.'"[6] 119 N.J. 628, 642 (1990) (quoting <u>Waterson v. Gen. Motors Corp.</u>, 111 N.J. 238, 263 (1988)).  The reason for our rule is that "statutes rarely define a standard of conduct in the language of common-law negligence.  Hence, proof of a bare violation of a statutory duty ordinarily is not the same as proof of negligence." <u>Ibid.</u>

Thus, the only occasion for application of negligence per se in New Jersey is in "the exceptional situation," <u>Horbal v. McNeil</u>, 66 N.J. 99, 105 n.1 (1974), where a statute specifically incorporates a common law standard of care, as, for example, N.J.S.A. 39:4-97, the careless driving statute, which by its "plain language . . . prohibits negligent driving." <u>Eaton</u>, 119 N.J. at 643. "Proof of the violation of the statute" in that circumstance, "is proof of

---

[6] The <u>Restatement (Second) of Torts</u> § 288B (1965) counts New Jersey among the "small minority of the courts [that] have held that the violation of either a statute or an ordinance is at most evidence of negligence, for the jury," citing <u>Evers v. Davis</u>, 86 N.J.L. 196, 205 (E. & A. 1914) (holding the operation of the "statute, in fine, is that the defendant's duty toward the plaintiff as affected by such statute takes the place of what would have been his common-law duty if such statute had not been enacted, leaving the action of negligence in other respects unaffected").  The <u>Third Restatement</u> notes only "[a]bout a dozen states conclude that violation of a statute is only some evidence of negligence," including New Jersey.  <u>Restatement (Third) of Torts: Liab. for Physical & Emotional Harm</u> § 14 Reporters' Note, comment c (2010).

negligence itself."  Ibid.; Torres v. Pabon, 225 N.J. 167, 187 (2016) (noting a driver's conduct contravening a common law standard incorporated into the motor vehicle code "is negligence and a jury should be so instructed") (quoting Dolson v. Anastasio, 55 N.J. 2, 10 (1969)).  As the Court reasoned in Eaton, "[i]t would be inconsistent to find" a defendant had violated the careless driving statute, "but that she had not been negligent."[7]  119 N.J. at 643.

That is not to say a factfinder must ignore a party's violation of a statute. As we noted over sixty years ago, the general rule in this State is that "the violation of a statute, while not negligence Per se, is evidence which may be considered by a jury together with all of the evidence in determining issues of negligence or contributory negligence."  Mattero, 71 N.J. Super. at 9 (emphasis added).  We added the necessary caveat, however, that "this rule is subsumed by the overriding principle that the statutory violation, to be evidential, must be causally related to the happening of the accident, since a permissible inference of causality is indispensable to its relevancy."  Ibid.

---

[7]  The Third Restatement suggests "the doctrine of negligence per se is largely superfluous in ascertaining the actor's liability" in statutes "that duplicate the common law," leading some courts to allow parties to argue negligence per se; but others to more frequently reject the doctrine, "recognizing its redundancy and appreciating that it does not serve its typical function of simplifying or providing structure to the rendering of negligence determinations." Restatement (Third) of Torts: Liab. for Phys. & Emot. Harm § 14 cmt. e.

When the judge granted plaintiff's motion to add the negligence per se claim in count fourteen of the third amended complaint, he quoted our language in Mattero, but left out the critical portion emphasized above.[8] That omission led the judge to conclude, erroneously, that "[g]enerally, negligence 'per se' can be asserted when there is an alleged causal relationship between the negligence and the violation of a statute or regulation." That is an incorrect statement of our law. Negligence per se in New Jersey is limited to the exceptional situation in which the Legislature has incorporated a common law standard of care into a statute. In the usual case, violation of a statute is only evidence of negligence, and only if the statutory violation was "causally

---

[8] In finding plaintiff had sufficiently pled a cognizable claim for negligence per se, the judge wrote:

> The violation of a statute or regulation 'may be considered by a jury together with all of the evidence in determining issues of negligence[,]' and this proposition is 'subsumed by the overriding principle that the . . . statutory violation, to be evidential, must be causally related to the happening of the accident[.]' Mattero v. Silverman, 71 N.J. Super. 1, 9 (App. Div. 1961), certif. denied, 36 N.J. 305 (1962). Generally, negligence 'per se' can be asserted when there is an alleged causal relationship between the negligence and the violation of a statute or regulation.

related to the happening of the accident."[9]  Ibid.  From this, it's plain the judge's conclusion that plaintiff Labega could plead a cause of action for negligence per se based on "an alleged causal relationship between the negligence and the violation of a statute or regulation" was clear error.[10]

---

[9]  If the statutory violation did not cause or contribute to the happening of the accident, it is irrelevant and should be excluded from the evidence.  Mattero, 71 N.J. Super. at 9 (explaining "the trial judge, being the exclusive arbiter of the relevancy of evidence, must initially determine in the particular circumstances of the case whether or not a jury could reasonably infer that the [statutory violation] caused or contributed to the happening of the accident"). In Mattero, we reversed a no cause verdict based on the trial judge's error in admitting evidence that the plaintiff was illegally driving on a learner's permit at the time of the accident, finding that evidence "irrelevant to the issue of proximate cause and inadmissible."  Id. at 10.

[10]  Confusion in attempting to apply the doctrine of negligence per se is apparently not uncommon.  See Robert F. Blomquist, The Trouble with Negligence Per Se, 61 S.C. L. Rev. 221, 260 (2009) (observing "many American courts continue to struggle with negligence per se principles").  One commentator, recommending the doctrine be abandoned based on its "shaky theoretical foundations" and "difficult and unnecessary problems of implementation, miring courts and litigants in an increasingly complex, muddled, and ultimately useless doctrinal morass," argues "[a]n approach simply permitting the fact-finder to assess the defendant's violation of statute as one factor in determining negligence" — as our courts do — "would lead to better outcomes in cases and more efficient use of court resources."  Barry L. Johnson, Why Negligence Per Se Should Be Abandoned, 20 N.Y.U. J. Legis. & Pub. Pol'y 247, 249 (2017).  See Alloway v. Bradlees, Inc., 157 N.J. 221, 228, 235-36 (1999) (Justice Handler explaining in a workplace safety action that "while it is feasible to make liability turn on the violation of an OSHA regulation, a sounder approach accords the violation relevance, but not dispositive weight," particularly as "the common law provides ample remedial relief that is flexible and adaptive of changing circumstances.").

23

There was, of course, a second, and perhaps even more fundamental error, which also emanated from the judge's grant of the motion to amend. As we noted, when the judge allowed plaintiff to add the negligence per se claim in count fourteen of the third amended complaint, he mistakenly analyzed the allegations contained in count eight of plaintiff's second amended complaint alleging Joshi's vicarious liability for Borja's care of plaintiff under the Physician Assistant Licensing Act, N.J.S.A. 45:9-27.10 to -27.28 and its implementing regulations. Plaintiff's negligence per se claim in count fourteen, however, is not premised on defendants' violation of a statute or regulation but, instead, on defendants' breaches of the "[p]olicies, procedures, protocols and guidelines for patient care in JFK's emergency department," which plaintiff alleges "violate standards of care of professional practice that govern and guide patient care at JFK's emergency department." On the summary judgment motion, the judge extended his error by finding plaintiff had established a prima facie cause of action for negligence per se based on defendants' alleged breach of hospital policy. Not so.

Plaintiff has not cited any case to support his claimed cause of action that defendants' breaches of JFK's "policies, procedures, protocols and guidelines" could constitute negligence per se in this State, and we are confident none exists. Even the more liberal application of negligence per se

24

represented by the Restatement is limited to violation of statutes or other governmental enactments; negligence per se has no applicability to a violation of a standard issued by a private, non-governmental entity such as JFK. See Restatement (Second) of Torts, § 288B (1965) ("The unexcused violation of a legislative enactment or an administrative regulation which is adopted by the court as defining the standard of conduct of a reasonable man, is negligence in itself.") (emphasis added).[11]

In addition, this is a medical malpractice action. Except in the rare case in which the standard of care is common knowledge, Sanzari v. Rosenfeld, 34 N.J. 128, 141-42 (1961), a plaintiff attempting to prove medical malpractice "'must present expert testimony establishing (1) the applicable standard of care; (2) a deviation from that standard of care; and (3) that the deviation proximately caused the injury.'" Nicholas v. Mynster, 213 N.J. 463, 478

---

[11] The Third Restatement defines negligence per se similarly: "An actor is negligent if, without excuse, the actor violates a statute that is designed to protect against the type of accident the actor's conduct causes, and if the accident victim is within the class of persons the statute is designed to protect." Restatement (Third) of Torts: Liab. for Phys. & Emot. Harm § 14 (emphasis added). Although a comment to that section states it "equally applies to regulations adopted by state administrative bodies, ordinances adopted by local councils, and federal statutes as well as regulations promulgated by federal agencies," id. at § 14 comment a, a comment to section 13, makes clear an actor's compliance with "a standard issued by a private organization . . . does not call into play the rules relating to violation of and compliance with public enactments, set forth in §§ 14- 16," i.e., those sections treating negligence per se, id. at § 13, comment e.

(2013) (quoting Gardner v. Pawliw, 150 N.J. 359, 375 (1997)).  Permitting a factfinder to treat a health care provider's violation of hospital policy as a per se breach of the standard of care runs counter to the entire thrust of our case law in this area.[12]  See Morlino v. Med. Ctr. of Ocean Cty., 152 N.J. 563, 579-82 (1998) (holding warnings in drug package insert and the Physicians' Desk Reference, "[a]lthough admissible along with expert testimony on the issue of the standard of care, . . . are not conclusive evidence of the standard of care or accepted practice in using the drug" and thus "do not, as a matter of law, establish the standard of care or negligence"); Cast Art Indus., LLC v. KPMG LLP, 416 N.J. Super. 76, 106 (App. Div. 2010) (holding in an accounting malpractice action that "[a] defendant's 'internal policies — standing alone — cannot demonstrate the applicable standard of care'") (quoting Briggs v. Wash. Metro. Area Transit Auth., 481 F.3d 839, 848 (D.C. Cir. 2007)), rev'd on other grounds, 209 N.J. 208 (2012); Johnson v. Mountainside Hosp., 239 N.J. Super. 312, 324 (App. Div. 1990) (finding no error in court's refusal to allow hospital bylaw or accreditation standard to serve as standard of care for physician

---

[12]  Plaintiff's counsel made clear at oral argument that he was asking us to extend the common law to allow him to prove malpractice based on the violation of hospital policy incorporated into the hospital's agreements with the third-party practices staffing the hospital's departments and those practices' agreements with the health care providers working in the hospital, without an expert.  We decline to do so.

without "foundation evidence" it represented legal standard for determining whether the defendant doctors committed malpractice).

Because defendants' alleged violation of hospital policy is not negligence per se as a matter of law, the judge erred in denying their motions for partial summary judgment on count fourteen of the third amended complaint. On remand, plaintiff will be limited to proving negligence in accordance with the Court's controlling precedents of Nicholas and Morlino.

We reverse the trial court's June 1, 2021 orders denying partial summary judgment to defendants on counts nine through fifteen of the third amended complaint and remand for entry of orders granting partial summary judgment to defendants on those counts. We do not retain jurisdiction.

Reversed and remanded.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

27                                                              A-3399-20